COMMONWEALTH of Pennsylvania,
Appellee

v.

Gene BAKER, Appellant.

Superior Court of Pennsylvania.

Submitted May 28, 2013.

Filed July 19, 2013.

Thomas M. Dickey, Altoona, for appellant.

William J. Higgins, Jr., District Attorney, Bedford, for Commonwealth, appellee.

BEFORE: DONOHUE, OLSON and MUSMANNO, JJ.

OPINION BY DONOHUE, J.:

Gene Baker ("Baker") appeals from the judgment of sentence entered on August 15, 2011, by the Court of Common Pleas, Bedford County, following his convictions of seven counts of possession of a controlled substance, seven counts of possession with intent to deliver a controlled substance ("PWID"), and one count of possession of drug paraphernalia.[1] Upon review, we affirm the judgment of sentence. Further, we refuse to review the trial court's denial of Baker's ineffective assistance of counsel claim, which was raised by way of a post-trial motion, as we find that Baker's waiver of relief under the Post Conviction Relief Act[2] was not express, knowing and voluntary.

The charges arose after Baker sold heroin and/or cocaine to an undercover state police officer and a confidential informant on six separate occasions—May 18, May 24, May 26, June 4, June 17, and June 22, 2010. Upon returning to his residence after the June 22 buy, police arrested Baker and executed a search of his home pursuant to a warrant. During the search, Baker showed the police heroin that he had hidden in a letter holder on his wall. Police also recovered, *inter alia*, drug paraphernalia from Baker's bedroom, a soda can converted into a pipe for smoking drugs, and a sawed off shotgun from the top of a bookshelf located approximately eight feet from the heroin in the letter holder.

Baker denied that he sold drugs on May 18, 24, and 26, testifying that he rode with the confidential informant to another location at which the confidential informant purchased drugs from an unknown man in a beige Buick. He admitted to selling drugs on June 4, 17, and 22, stating he only did so because the confidential informant was "dope sick," and Baker felt sorry for him. He testified that the drugs he sold to the confidential informant were drugs he maintained solely for personal use.

A jury convicted Baker of the above-listed charges. By agreement of the parties, the trial court included a special interrogatory on the verdict slip whereby the jury determined whether the firearm was in close proximity to the controlled substance found in the home.[3] The jury found that the sawed off shotgun recovered during the search of the home was in close proximity to the heroin located in the letter holder on the wall of Baker's home. The trial court sentenced Baker on August 15, 2011 to an aggregate term of 15 to 31 years of imprisonment, broken down as follows:

- Count 1—one to two years of imprisonment;

- Count 2—two to four years of imprisonment, concurrent with Count 1;

---

1. 35 P.S. § 780–113(a)(16), (30), (32).

2. 42 Pa.C.S.A. §§ 9541–9546.

3. A person convicted of PWID who is in physical possession or control of a firearm that is "in close proximity to the controlled substance" is subject to a mandatory minimum sentence of at least five years of imprisonment. 42 Pa.C.S.A. § 9712.1(a). This determination is typically made by the trial court at sentencing, not by the jury. 42 Pa.C.S.A. § 9712.1(c).

- Count 3—two to four years of imprisonment, concurrent with Count 1, consecutive to Count 2;
- Count 4—two to four years of imprisonment, concurrent with Count 1, consecutive to Counts 2 and 3;
- Count 5—two to four years of imprisonment, concurrent with Count 1, consecutive to Counts 2, 3, and 4;
- Count 6—one to two years of imprisonment, concurrent with all other sentences imposed;
- Count 7—seven to 15 years of imprisonment, concurrent with Counts 1 and 6, consecutive to Counts 2, 3, 4, and 5;
- Counts 8 through 14 for possession of a controlled substance merge for sentencing purposes with the above PWID sentences;
- Count 15 for possession of drug paraphernalia—six months to one year of imprisonment, concurrent with all other sentences imposed.

On August 22, 2011, Baker filed a timely post-sentence motion, which the trial court denied on January 23, 2012.[4] Baker filed a timely notice of appeal and complied with the trial court's order for a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court did not issue a separate opinion pursuant to Pa.R.A.P. 1925(a), and instead relied upon its opinion dismissing Baker's post-sentence motions to address the issues raised on appeal.

Baker raises five issues for our review:

1. Whether the trial court erred in finding the evidence sufficient to convict [Baker] of the offense of possession with intent to deliver at count seven of the information for the substance seized inside [Baker's] residence since the Commonwealth did not prove the such [*sic*] substance to be heroin?

2. Whether the trial court erred in applying the 5–year mandatory minimum at 42 Pa.C.S. § 9712.1 when the Commonwealth failed to [prove] that the substance proximate to the firearm was a controlled substance or that such substance was possessed with the intent to deliver?

3. Whether the sentencing court erred by imposing the 5–year mandatory minimum at 42 Pa.C.S. § 9712.1 consecutive with the 2–year mandatory minimum at 18 Pa.C.S. § 7508(a)(7)(i) for one criminal offense when not authorized and in conflict with 42 Pa.C.S. § 9716?

4. Whether the sentencing court abused its discretion in imposing sentence by running consecutively all of those terms in which mandatory minimums had been applied, resulting in a non-individualized sentence that exceeded the gravity of the criminal conduct and abnegated rehabilitation?

5. Whether the trial court erred in denying the claims of ineffective assistance of counsel raised in the post-sentence motions and after waiver of post-conviction review when trial counsel's lack of preparation had no reasonable strategic or tactical purpose and resulted in prejudice?

Baker's Brief at 9–10 (emphasis omitted).

■ We begin with Baker's sufficiency of the evidence claim, which we review according to the following standard:

The standard we apply in reviewing the sufficiency of the evidence is whether

---

4. On December 21, 2011, the trial court granted Baker's motion for an extension of the disposition period beyond 120 days pursuant to Pa.R.Crim.P. 720(B)(3)(b).

viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Knox,* 50 A.3d 749, 754 (Pa.Super.2012), *appeal granted on other grounds,* —— Pa. ——, 68 A.3d 323 (2013).

■ Baker challenges the sufficiency of the evidence to convict him of his seventh count of PWID, relating to the drugs recovered during the execution of the search warrant. Specifically, he asserts that the Commonwealth failed to prove that the substance recovered from the letter holder was in fact a controlled substance, and he therefore should have been acquitted of that charge. Baker's Brief at 16. Al-

though he recognizes that a controlled substance may be identified as such by circumstantial evidence,[5] he states that because there was no testimony about field or lab testing of the substance, the evidence was not sufficient to prove that the substance was heroin. *Id.* at 16–20. What Baker fails to acknowledge, however, is that Baker himself admitted that the substance found in the letter holder was heroin—he admitted this not only to the police during the execution of the warrant, but also when he testified at trial. *See* N.T., 4/27/11, at 126, 137–38, 214–15. A defendant is bound by admissions of fact he makes on the record at trial. *Commonwealth v. Johnson,* 961 A.2d 877, 882–83 (Pa.Super.2008). As such, this argument fails.

■ Baker also argues that the Commonwealth failed to prove that he intended to deliver the controlled substances found on his person and in the letter holder inside his home as a result of the execution of the search warrant. Baker's Brief at 20–22. "It is well settled that all the facts and circumstances surrounding possession are relevant in making a determination of whether contraband was possessed with intent to deliver." *Commonwealth v. Brown,* 904 A.2d 925, 931 (Pa.Super.2006), *appeal denied,* 591 Pa. 710, 919 A.2d 954 (2007).

■ Baker is correct that there was some evidence presented that suggested the drugs found may have been for personal use, *e.g.,* a soda can that had been converted into a pipe, and Baker's testimony that the drugs found were for his personal use. N.T., 4/27/11, at 129–30, 216. There was also ample evidence presented, however, that Baker intended to sell the

---

**5.** *See Commonwealth v. Lawson,* 448 Pa.Super. 445, 453, 671 A.2d 1161, 1165 (1996) ("[T]he identity of illegal narcotic substances may be established by circumstantial evidence alone, without any chemical analysis of the seized contraband.").

drugs in question. There were items found during the search of Baker's residence that suggest the sale of drugs, including owe sheets, a razor blade, two small false-compartment safes, and three cell phones. *Id.* at 129–33. The 15 vials of crack cocaine and five vials of heroin found on his person were located in a black change purse, from which he had just provided the drugs he sold to the undercover state trooper during the last controlled buy. N.T., 4/27/11, at 92, 177–78. Along with the drugs, police also found in the black change purse over $2,300.00 in cash, $620.00 of which was the pre-marked buy money, as well as sandwich baggies, which police testified are commonly used in drug transactions. *Id,* at 175–76, 179.

■■■■■■ We disagree with Baker's claim that the Commonwealth was required to present expert testimony to prove intent to deliver. Baker's Brief at 21–22. To the contrary, case law states that expert testimony is important in cases where the other evidence does not establish that defendant possessed the drugs with the intent to deliver. *Commonwealth v. Ratsamy,* 594 Pa. 176, 182, 934 A.2d 1233, 1236 (2007). "Such testimony is admissible to aid in determining whether the facts surrounding the possession of controlled substances are consistent with intent to deliver." *Id.,* at 182, 934 A.2d at 1237. Viewing the evidence in the light most favorable to the Commonwealth as

our standard of review requires, we conclude that the totality of the evidence would permit a reasonable jury to find that Baker possessed the controlled substances found at the time of the execution of the warrant with the intent to deliver.

In his second issue on appeal, Baker argues that the trial court erred by sentencing him pursuant to 42 Pa.C.S.A. § 9712.1, which mandates a five-year minimum sentence for PWID convictions when the controlled substance is in close proximity to a firearm. Baker's Brief at 22; *see supra* n. 3. He premises his entire argument on the Commonwealth's failure to prove that the substance found during the execution of the search warrant was a controlled substance or that it was possessed with the intent to deliver. Baker's Brief at 22–26. As we have already determined that the Commonwealth satisfied its burden of proof in both respects, this argument likewise fails.

■■■ Baker next asserts that the trial court erred by sentencing him consecutively pursuant to 42 Pa.C.S.A. § 9712.1 (*see supra* n.3) and 18 Pa.C.S.A. § 7508(a)(7)(i) (requiring a two-year minimum sentence for convictions of PWID where the controlled substance was between one and five grams of heroin).[6] Baker's Brief at 26. The trial court found that it complied with the 42 Pa.C.S.A. § 9712.1(b), which addresses this precise circumstance, and thus

---

6. Section 7508(a)(7)(i) states:
   (7) A person who is convicted of violating section 13(a)(14), (30) or (37) of The Controlled Substance, Drug, Device and Cosmetic Act where the controlled substance or a mixture containing it is heroin shall, upon conviction, be sentenced as set forth in this paragraph:
   (i) when the aggregate weight of the compound or mixture containing the heroin involved is at least 1.0 gram but less than 5.0 grams the sentence shall be a mandatory minimum term of two years in

prison and a fine of $5,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity; however, if at the time of sentencing the defendant has been convicted of another drug trafficking offense: a mandatory minimum term of three years in prison and $10,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity[.]
18 Pa.C.S.A. § 7508(a)(7)(i).

the sentence was proper. Trial Court Opinion, 1/23/12, at 3. We agree.[7]

Section 9712.1(b) of the Sentencing Code states:

**(b) Limitation on aggregate sentences.**—Where a defendant is subject to a mandatory minimum sentence under 18 Pa.C.S. § 7508(a) (relating to drug trafficking sentencing and penalties) and is also subject to an additional penalty under subsection (a) and where the court elects to aggregate these penalties, the combined minimum sentence may not exceed the statutory maximum sentence of imprisonment allowable under The Controlled Substance, Drug, Device and Cosmetic Act.

42 Pa.C.S.A. § 9712.1(b).

Baker contends that the use of the plural "sentences" in the title of 9712.1(b) reveals that it was only intended to be applied to multiple sentences, not a single sentence. Baker's Brief at 27. He asserts that 42 Pa.C.S.A. § 9716, which prohibits the imposition of two mandatory minimum sentences,[8] supports his argument. Baker's Brief at 27–29.

The question of whether the two mandatory minimum sentences in question can be applied to a single conviction was answered by this Court in *Commonwealth v. Hopkins*, 67 A.3d 817 (Pa.Super. 2013). In *Hopkins*, we rejected a defendant's argument that the imposition of the two mandatory minimum sentences for a single PWID conviction violated the prohibition against double jeopardy. *Id.*, at 821–24. As here, the trial court in *Hopkins* sen-

tenced the defendant to 7 to 15 years of imprisonment, applying the five-year mandatory minimum in 42 Pa.C.S.A. § 9712.1(a) and the two-year mandatory minimum in 18 Pa.C.S.A. § 7508(a)(7)(i) consecutively to a single PWID conviction with a firearm. We found that Section 9712.1(b) "specifically provides that these mandatory minimum sentences can, at the discretion of the trial court, be aggregated, limited only by the statutory maximum," and because the sentence did not exceed the statutory maximum sentence for a PWID conviction, the sentence was legal. *Id.*, at 821.

There is no ambiguity or lack of clarity in the statutory provisions at issue here. Clearly, the legislature has determined that when committed with a firearm, the crime of PWID warrants a specific and unalterable minimum sentence. It follows that additional separable sentencing enhancements may arise from the same crime and may be applied.

*Id.*

Like Baker, the defendant in *Hopkins* pointed to our prior decision in *Commonwealth v. McLaughlin*, 393 Pa.Super. 277, 574 A.2d 610 (1990), *appeal denied*, 527 Pa. 616, 590 A.2d 756 (1991), *cert. denied*, 502 U.S. 916, 112 S.Ct. 320, 116 L.Ed.2d 261 (1991), in support of his argument. *Hopkins*, 67 A.3d at 823; Baker's Brief at 27. We discussed *McLaughlin* and rejected the defendant's reliance thereon:

In *McLaughlin*, the defendant entered a bar and repeatedly fired his shotgun, killing one person and injuring three others. He subsequently pled guilty to

---

7. Baker's challenge is to the legality of his sentence. *Commonwealth v. Hopkins*, 67 A.3d 817, 821 (Pa.Super.2013). "In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law." *Id.*

8. Section 9716 states: "Where two or more sections requiring mandatory minimum sentences are applicable, the court shall be bound by that section requiring the greater penalty." 42 Pa.C.S.A. § 9716. We observe that like Section 9712.1(b), Section 9716 uses the plural "sentences" as well.

third-degree murder, three counts of aggravated assault, recklessly endangering another person, and criminal mischief. Prior to sentencing, the Commonwealth filed notice of its intention to proceed under the provisions of 42 Pa.C.S.A. § 9712(b), requiring mandatory minimum sentences of at least five years for the commission of third degree murder and aggravated assault while visibly possessing a firearm. He was sentenced to a term of 10 to 20 years on the murder charge, 3 terms of 5 to 10 years for aggravated assault, 1 to 2 years for reckless endangerment and 6 months to 1 year for criminal mischief, with the first three counts running consecutive to each other and the other three counts running concurrently with the first three.

On appeal, the [appellant] argued the sentencing court rendered an illegal sentence in imposing four mandatory minimum sentences for crimes arising out of a single criminal episode involving visible possession of a firearm. He claimed the sentence violated the legislative intent behind the mandatory minimum sentencing provisions and the double jeopardy clause of the Fifth Amendment of the United States Constitution. The defendant averred that Section 9716 was applicable, which states that when two or more sections requiring mandatory minimum sentences are applicable, a court must impose the greater penalty. 42 Pa.C.S.A. § 9716. In upholding the sentence imposed, this court explained *'[t]his is not a case in which two mandatory sentences apply to a single crime,* but one in which there are several crimes (or victims), each of which calls for a separate mandatory sentence.' We rejected the appellant's claim that Section 9716 had been violated.

[Hopkins] hangs his hat on the first clause of the latter sentence and argues that the instant case is a case in which two mandatory minimum sentences apply to a single crime. [Hopkins] suggests that *McLaughlin* would render the imposition of two mandatory minimum sentences illegal. We disagree that *McLaughlin* stands for such a prohibition and concur with the Commonwealth that the language relied upon in *McLaughlin,* published nearly 15 years before the enactment of Section 9712.1(b), is *dicta* and contrary to the will of our state legislature, as evidenced by [Section] 9712.1(b). The legislature clearly intended to provide the sentencing court with discretion to aggregate the mandatories under Section 7508 and Section 9712.1(b).

*Hopkins,* 67 A.3d at 823 (internal citations omitted) (emphasis supplied). Relying on our Supreme Court's interpretation of the legislature's intent in passing Section 9712.1, we went on to say:

Substantial deference is granted to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes. As the Pennsylvania Supreme Court noted in *Commonwealth v. Zortman,* 611 Pa. 22, 23 A.3d 519 (2011), the available legislative history indicates that the General Assembly's main concern in enacting Section 9712.1 was:

to provide law enforcement and prosecution personnel across the Commonwealth with greater means to 'break the link between guns and drugs once and for all.... The whole purpose of this legislation to provide a mandatory sentence is to take guns out of drug trafficking and stop gun violence.' Consideration of H.B. 752 Continued, Pa. H.R. Reg. Sess. No. 105 (Dec. 16, 2003) (statement of Rep. Bard of Montgomery County); 'The purpose of this amendment is to provide a

deterrent for those who are dealing in drugs and using firearms.' Reconsideration of A5329, Pa. S. Reg. Sess. No. 65 (Nov. 19, 2004) (statement of Sen. Piccola of Dauphin County).

*Zortman, supra* at 34 n. 4, 23 A.3d at 526 n. 4. Thus, in enacting Section 9712.1, the legislature recognized that drug dealers can be violent and those who find themselves where firearms are present will be subject to more severe penalties.

*Hopkins,* 67 A.3d at 823–24.

■ Furthermore, the plain language of the statute belies Baker's argument that Section 9712.1(b) is intended to apply only to two separate convictions. Section 9712.1(b) permits aggregation of the two mandatory minimum sentences as long as the combined sentence does not exceed the statutory maximum sentence permitted for the conviction. 42 Pa.C.S.A. § 9712.1(b). Each crime for which there is a conviction carries its own statutory maximum. Thus, if the legislature intended that courts not apply the two minimum sentences to a single conviction, this language would be unnecessary. "Basic rules of statutory construction set forth that statutes shall be construed, if possible, to give effect to all its provisions and that the legislature did not intend any statutory language to exist as mere surplusage." *Commonwealth v. Velez,* 51 A.3d 260, 265 (Pa.Super.2012) (citations omitted); 1 Pa.C.S.A. § 1921(a), (b).

■ Based upon our holding in *Hopkins* and our Rules of Statutory Construction, we conclude that the trial court did not err by imposing the two mandatory minimum sentences pursuant to 42 Pa.

C.S.A. § 9712.1(b) and 18 Pa.C.S.A. § 7508(a)(7)(i) consecutively.

■ Baker's fourth issue on appeal challenges the trial court's discretion in fashioning his sentence. As Baker recognizes, such an issue is not appealable as a matter of right, but is only subject to review if the following four-part test is met:

(1) the appellant preserved the issue either by raising it at the time of sentencing or in a postsentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of his appeal pursuant to Pa. R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

*Commonwealth v. Stein,* 39 A.3d 365, 370 (Pa.Super.2012) (citation omitted).

■ Baker preserved the issue by including it in a timely filed post-sentence motion and by filing a timely notice of appeal. He also included a statement pursuant to Pa.R.A.P. 2119(f) in his appellate brief, asserting that the trial court abused its discretion by imposing many of his sentences consecutively, as the trial court failed to account for Baker's rehabilitative needs and "misapprehended the nature and circumstances of the offenses" resulting in a sentence that is "unreasonable and contrary to the fundamental norms of the Sentencing Code." Baker's Brief at 30–31 (emphasis omitted). We find that this is a substantial question suitable for our review.[9] *See Commonwealth v. Harvard,* 64 A.3d 690, 701 (Pa.Super.2013) (defining substantial question).

■ We review a trial court's sentencing determination for abuse of discretion.

9. Although raised in Baker's post-sentence motion and 1925(b) statement, the trial court failed to address this issue in its opinion.

Based upon the record before us and in the interest of judicial economy, we need not remand the case for the trial court to do so.

*Commonwealth v. Walls,* 592 Pa. 557, 564, 926 A.2d 957, 961 (2007). Sentencing in Pennsylvania is individualized, and requires the trial court to fashion a sentence "that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant[.]" 42 Pa.C.S.A. § 9721(b). The trial court must also consider the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing. *Id.* Our review of this issue is guided by the express standards set forth in the Sentencing Code:

(c) **Determination on appeal.**—The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

(d) **Review of record.**—In reviewing the record the appellate court shall have regard for:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(c), (d).

■ There is no hard rule for determining what makes a sentence "clearly unreasonable." Our Supreme Court has stated a sentence may be found to be "unreasonable" based upon the trial court's consideration of the four factors under 9781(d) or if we determine "that the sentence was imposed without express or implicit consideration by the sentencing court of the general standards applicable to sentencing found in Section 9721." *Walls,* 592 Pa. at 568–69, 926 A.2d at 964. When a sentencing court has reviewed a presentence investigation report, we presume that the court properly considered and weighed all relevant factors in fashioning the defendant's sentence. *Commonwealth v. Fowler,* 893 A.2d 758, 767 (Pa.Super.2006).

Baker concedes that each of his sentences were guideline sentences, but argues that by running some of the sentences consecutively, the aggregate sentence is clearly unreasonable because it ensures the 70-year-old defendant will die in prison; is not individualized; and fails to comply with Section 9721(b). Baker's Brief at 31–34.

We emphasize that we are not charged with imposing Baker's sentence. Rather, our task is to review the trial court's discretion when imposing Baker's sentence. The record reflects that the trial court reviewed Baker's presentence investigation report as well as letters sent on Baker's behalf extolling his excellent character and requesting leniency on his behalf. N.T., 8/15/11, at 3–4, 6, 24–25. It considered his admitted drug addiction and recommended that he obtain treatment while incarcerated. *Id.* at 27. The trial court also considered the sentencing guidelines.

*Id,* at 7–8. Prior to sentencing Baker, the trial court stated the following:

[ . . . ] I have to admit this is one of the most troubling and rather serious cases that I have ever dealt with. I have reviewed the Pre–Sentence Investigation and I have been informed by it. And there are many amounts of good in that report. As noted[,] Mr. Baker is a Veteran. He has no prior record, criminal record at all. He has a child and grandchildren. He was involved for many years with the pharmacies as a business agency. A very fine career. He did volunteer work with the Salvation Army Outreach, a community leader.

We would hope someone like Mr. Baker would understand the seriousness of his consequences [*sic* ] and realize the damage he was doing to the very community who supported him for so many years. He was a leader in his community and at his workplace and chose instead to become a drug trafficker, because that's what the record unfortunately shows. We had seven sales here, [PWID]. It's a very interesting case I must admit. I don't understand. If you had shown me the information on Mr. Baker, absent this case, I would have thought that he was one of the finest people in the community. And I'm sure he still understands there are serious offenses. And in many respects it's not appropriate to run them concurrent. I understand his age and his health.

*Id.* at 25–27.

■ Although we are troubled by the fact that the trial court all but guaranteed that Baker would serve a life sentence, we do not find this to be reversible error in this case. Arguably, any sentence of incarceration could be a life sentence for Baker, a septuagenarian with health problems. The trial court considered Baker's history and his personal characteristics, including his age. It had the benefit of sitting through the trial and sentencing hearing and observing Baker first-hand. It also had the benefit of reviewing a presentence report. The trial court considered the seriousness of the offenses committed by Baker, and sentenced him accordingly, further recommending that Baker undergo drug treatment and counseling while incarcerated. Based upon our review of the record and our standard of review, we have no basis to find that the sentence imposed is clearly unreasonable. As such, no relief is due.

As his final issue on appeal, Baker asserts that the trial court erred by denying his post-sentence motion and finding that trial counsel was effective. Baker's Brief at 34. Baker contends that trial counsel was ineffective based upon his decision to have Baker testify and his failure to prepare Baker for that testimony. *Id.* at 35–36. The trial court found Baker's claims of counsel's ineffectiveness to be meritless. Trial Court Opinion, 1/23/12, at 2–3.

Prior to addressing this issue on the merits, we must first determine whether it is properly before us on direct appeal. In *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002), our Supreme Court held that generally, a criminal defendant must await collateral review pursuant to the Post Conviction Relief Act ("PCRA") to raise issues of counsel's ineffectiveness. *Id.* at 67, 813 A.2d at 738. In *Commonwealth v. Bomar,* 573 Pa. 426, 826 A.2d 831 (2003), a pre-*Grant* case,[10] our Supreme

---

10. Although *Bomar* was decided after our Supreme Court's decision in *Grant,* it involved ineffective assistance of counsel claims raised in postverdict motions prior to the *Grant* decision. *See Commonwealth v. Barnett,* 25 A.3d 371, 373 (Pa.Super.2011) (*en banc* ); *see also Commonwealth v. Liston,* 602 Pa. 10, 22, 977

Court carved out an exception to that general rule, finding claims of ineffective assistance of counsel reviewable on direct appeal where trial counsel withdrew from representation; the claim was raised and preserved by new counsel before the trial court; the trial court held a hearing on the claim at which trial counsel testified; and the trial court addressed the ineffectiveness claim in its written opinion. *Id.* at 463–64, 826 A.2d at 853.

In two subsequent cases, our Supreme Court eliminated the *Bomar*-exception to the prohibition against reviewing ineffectiveness claims on direct appeal. *See Commonwealth v. Wright*, 599 Pa. 270, 320 n. 22, 961 A.2d 119, 148 n. 22 (2008) ("Prolix collateral claims should not be reviewed on post-verdict motions unless the defendant waives his right to PCRA review, because the PCRA does not afford the right to two collateral attacks."); *Commonwealth v. Liston*, 602 Pa. 10, 22, 977 A.2d 1089, 1096 (2009) (Castille, C.J., concurring) (limiting the holding in *Bomar* to pre-*Grant* cases and directing the lower courts "not to create or indulge unitary, hybrid review in the post-verdict and direct appeal context, unless such review is accompanied by an express, knowing and voluntary waiver of PCRA review.").[11]

This Court, sitting *en banc*, recognized this development in case law in *Commonwealth v. Barnett*, 25 A.3d 371 (Pa.Super.2011) (*en banc*), in which a defendant raised ineffectiveness of counsel claims on direct appeal pursuant to *Bomar*. After detailing the evolution of case law in this area, we held, "[b]ased on the opinion of the majority of participating justices in *Wright* and *Liston*, this Court cannot engage in review of ineffective assistance of counsel claims on direct appeal absent an 'express, knowing and voluntary waiver of PCRA review.'" *Id.* at 377 (citation to *Liston* omitted).

As the law currently stands, a valid waiver of PCRA review is a prerequisite to appellate review of ineffectiveness claims on direct appeal.[12] Because our Supreme Court and this Court *en banc* have instructed that ineffectiveness claims are generally not reviewable on direct appeal, before reviewing such a claim on

---

A.2d 1089, 1096 (2009) (Castille, C.J., concurring).

11. Two of the five participating Justices joined Chief Justice Castille's concurring opinion in *Liston*, which therefore garnered majority support. *See Commonwealth v. Montalvo*, 604 Pa. 386, 432, 986 A.2d 84, 111 (2009) (Castille, C.J., concurring) (stating that in his concurring opinion in *Liston*, he "spoke for a majority of the *Liston* Court").

12. As we noted in *Barnett*, we are aware that our Supreme Court granted allowance of appeal in *Commonwealth v. Holmes*, 606 Pa. 209, 996 A.2d 479 (2010), to decide the following issue:

Whether the claims of ineffective assistance of counsel which are the exclusive subject of this *nunc pro tunc* direct appeal: (1) are reviewable on direct appeal under *Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831 (Pa.2003); (2) should instead be de-ferred to collateral review under the general rule in *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (Pa.2002)[,] that defendants should wait until the collateral review phase to raise claims of ineffective assistance of counsel; or (3) should instead be deemed reviewable on direct appeal only if accompanied by a specific waiver of the right to pursue a first PCRA petition as of right. *See Commonwealth v. Wright*, 599 Pa. 270, 961 A.2d 119, 148 n. 22 (Pa.2008) ('Prolix collateral claims should not be reviewed on post-verdict motions unless the defendant waives his right to PCRA review....'); *see also Commonwealth v. Liston*, 602 Pa. 10, 977 A.2d 1089, 1095–1101 (Castille, C.J., concurring, joined by Saylor, J., & Eakin, J.).

*Id.; see also Barnett*, 25 A.3d at 375, n. 13. Unless and until *Wright, Liston*, and *Barnett* are overturned, they continue to be binding precedent. *Commonwealth v. Santiago*, 980 A.2d 659, 666 n. 6 (Pa.Super.2009).

direct appeal it is incumbent upon this Court to determine whether a defendant expressly, knowingly and voluntarily waived his or her right to PCRA review. *Cf. Commonwealth v. Corley*, 31 A.3d 293, 295–96 (Pa.Super.2011) (Superior Court *sua sponte* undertakes a four-part analysis prior to reviewing discretionary aspects of sentencing claims, as such claims are not reviewable as a matter of right); *see Commonwealth v. Quel*, 27 A.3d 1033, 1037 (Pa.Super.2011) (*sua sponte* dismissing without prejudice the appellant's ineffectiveness claim raised on direct appeal for failure to waive PCRA review). As Baker raises on direct appeal a challenge to trial counsel's effectiveness, we must therefore determine whether he made an express, knowing and voluntary waiver of his right to collateral review.

At the hearing on Baker's post-sentence motion, the record reflects the following exchange between the Commonwealth, defense counsel,[13] the trial court, and Baker:

> [DEFENSE COUNSEL]: In order for there to be any review [of the ineffective assistance of counsel claims raised,] [Baker] needs to waive any subsequent rights to file [a] [PCRA] [p]etition. And that has to be on the record. So I would ask before we start with the ineffectiveness of assistance [*sic*] claim in the [p]ost-[s]entence [m]otions that I would be able to put his testimony on the record. And I need him to take the stand. If I might just indicate that I've explained you get one bite at the table [*sic*].
>
> [COMMONWEALTH]: He can't argue ineffectiveness now in the [p]ost-[s]entence [m]otion, file a direct appeal, and come back and file a PCRA later. The language of that I think is pretty

straightforward whether Mr. Baker—I haven't read that exact case. But it's pretty clear that when we talk about Post–Conviction Hearing Act [*sic*] there's a separate statute. In other words in Pennsylvania currently the way this thing works: You go to the trial and you're acquitted. That's great. If you get a trial and you're convicted then we first test the, [*sic*] to see if there are errors or mistakes committed at the trial. All right. Now normally and historically those appeals are taken by the same lawyer that handled the trial. Essentially that's how it goes.

So case law in Pennsylvania developed that a lawyer couldn't raise his own ineffectiveness. We have a separate statute known as the Post–Conviction Hearing Act [*sic*] that says that you could raise certain issues. However, you wouldn't see all of your appeals all the way up to the Superior Court. After all that's done within a certain time period you can combine and raise some other issues. That's not done yet. And one of the issues you can raise at that time is the issue of counsel, that your counsel didn't do something correctly. And the reason he can raise it at that time is because the first lawyer who handled the appeal couldn't raise that. Because you can't raise your own ineffectiveness. The rule is that. But the problem is you have a new appeal lawyer.

Under the law the new appeal lawyer can raise ineffectiveness but if we deal with the ineffectiveness issue now and the Appellate Court deals with ineffectiveness there's nothing to take up now. The Post–Conviction Hearing only take[s] up things that previously couldn't be resolved. So, if we resolve the mat-

---

**13.** Following Baker's conviction but prior to sentencing, new counsel entered an appearance on Baker's behalf. Thus, trial counsel was no longer representing Baker at the time of the hearing on Baker's post-sentence motions.

ter it's done. It's been fully litigated. And I know this is complicated.

[TRIAL COURT]: Now just with that you can't get it tried again later. A fair statement, [defense counsel]?

[DEFENSE COUNSEL]: I believe so, Your Honor. [TRIAL COURT]: [Commonwealth]?

[COMMONWEALTH]: I agree with that entirely, Your Honor.

[TRIAL COURT]: All right. So have you discussed—let's ask this first: Have you discussed with [defense counsel], Mr. Baker, the consequences of raising at this time ineffectiveness of counsel?

[BAKER]: Yes, sir.

[TRIAL COURT]: Are you satisfied to have [defense counsel] raise these issues now?

[BAKER]: Yes.

[TRIAL COURT]: And do you understand if a final determination is made here and [I] don't rule in your favor you have the right to file and appeal it to the Appellate Court and Pennsylvania Superior Court? And you have the discretion to appeal to the Pennsylvania Supreme Court. So if at the end of the day none of those folks agree with you then you can't raise **the issue** again. Do you understand?

[BAKER]: Yes.

[TRIAL COURT]: Are you satisfied to proceed?

[BAKER]: Yes.

N.T., 9/29/11, at 3–8 (emphasis added).

The question of what constitutes a valid waiver under *Barnett* is a matter of first impression since no court in this Commonwealth has set forth the standard for a knowing, voluntary and express waiver of PCRA review. The record as set forth above, however, does not meet the rudimentary requirements for a valid waiver of a defendant's rights in any context.

■ For a waiver to be knowing, the defendant must be made aware of the "essential ingredients" of the right he or she is waiving to ensure there is an understanding of the significance of what he or she is giving up. *Commonwealth v. Williams,* 454 Pa. 368, 373, 312 A.2d 597, 600 (1973). For example, for a defendant to knowingly and intelligently waive his right to a jury trial, the defendant must know "the essential ingredients, basic to the concept of a jury trial," including "the requirements that the jury be chosen from members of the community (a jury of one's peers), that the verdict be unanimous, and that the accused be allowed to participate in the selection of the jury panel." *Id.* As another example, a knowing waiver of the right to appellate or PCRA counsel requires a record that demonstrates "the defendant understands: (1) his right to be represented by counsel; (2) that if he waives this right, he will still be bound by all normal procedural rules; and (3) that many rights and potential claims may be permanently lost if not timely asserted." *Commonwealth v. Meehan,* 427 Pa.Super. 261, 628 A.2d 1151, 1157 (1993).

■ To be voluntary, the waiver must be "the free and unconstrained choice of its maker." *Commonwealth v. Robinson,* 970 A.2d 455, 459 (Pa.Super.2009) (citation omitted). This requires a showing that the defendant, after consultation with counsel (if any) and consideration of the right he or she is forfeiting, has decided to waive the right at issue. *See, e.g., Wright,* 599 Pa. at 333, 961 A.2d at 156 (defendant voluntarily waived his right to testify at trial); *Commonwealth v. Rios,* 591 Pa. 583, 606, 920 A.2d 790, 803 (2007) (defendant voluntarily waived his right to call alibi witnesses).

■ Finally, for there to be an express waiver of a right, the trial court must

conduct a colloquy on the record to ensure the decision to waive the right is informed and voluntary. *See, e.g., Commonwealth v. Faulk,* 928 A.2d 1061, 1066 (Pa.Super.2007) (on-the-record colloquy required for express waiver of defendant's right to be present at trial); *Robinson,* 970 A.2d at 460 (colloquy required to ensure express waiver of right to counsel is knowing, voluntary, and intelligent).

■ ■ As discussed, and pursuant to *Liston, Wright* and *Barnett,* in order for a defendant to raise counsel's ineffectiveness on direct appeal, he or she must expressly, knowingly and voluntarily waive his or her right to PCRA review. Thus, established waiver principles must be applied to waiver of PCRA review when a defendant wishes to expedite the review of ineffective assistance of counsel claims by way of a post-trial motion. Consequently, a defendant must participate in an on-the-record colloquy, which ensures the defendant is aware of the rights being waived, *i.e.,* the "essential ingredients" of PCRA review. This includes, but is not limited to, an explanation of (1) the eligibility requirements for PCRA relief; (2) the right to be represented by counsel for a first PCRA petition; (3) the types of issues that could be raised pursuant to the PCRA that are now being given up; and (4) the PCRA is the sole means of obtaining nearly all types of collateral relief. *See* 42 Pa.C.S.A. §§ 9542–9543; Pa.R.Crim.P. 904(C). The trial court must also ensure the defendant has made the decision to waive his right to PCRA review after consulting with counsel (if any) and in consideration of his rights as they have been explained in the colloquy.[14]

■ ■ In the case at bar, defense counsel embarked on the correct path by suggesting a colloquy of Baker, under oath, to ensure he understood the rights he was waiving. Unfortunately, apart from the brief introduction by defense counsel, nothing said on the record was an accurate description of the rights Baker was forfeiting by raising the issue of trial counsel's ineffectiveness during direct review. Further confusing the issue, both attorneys then agreed with the trial court's statement that by raising trial counsel's specific instance of ineffectiveness during direct review meant **only** that Baker could not raise **that issue** again on collateral review, which is a clear misstatement of the law. During the exchange that took place between Baker and the trial court, Baker was clearly misinformed. On the record, Baker waived only his right to collateral review of the issue of counsel's ineffectiveness that he was raising in his post-sentence motion.

---

14. Although not necessarily required in other contexts, it may also be wise to have a defendant execute a written colloquy, as he or she is relinquishing valuable post-conviction rights. *See e.g.,* Pa.R.Crim.P. 590 (Comment) (permitting the use of a written colloquy in addition to an oral colloquy for a guilty plea colloquy); *Commonwealth v. Moser,* 921 A.2d 526, 529 (Pa.Super.2007) (same); *Commonwealth v. Houck,* 596 Pa. 683, 687–88, 948 A.2d 780, 782–83 (2008) (written and oral colloquy completed by the defendant to waive his right to a jury trial).

The Supreme Court in *Liston* referred the matter of a defendant's waiver of his or her PCRA rights to its Criminal Rules Committee. *Barnett,* 25 A.3d at 377, n. 16. *Barnett* was decided two years ago and this is our first published analysis of an attempted PCRA review waiver. (In one unpublished Memorandum of a defendant's appeal, we accepted a waiver of PCRA review without discussion). Even though it appears that defendants are opting to await collateral review of ineffectiveness claims, a Rule of Criminal Procedure setting forth the proper waiver procedure would be helpful to ensure uniformity among the trial courts when defendants choose to proceed on post-verdict motions.

As Baker did not make an express, knowing and voluntary waiver of his right to PCRA review in its entirety, we are unable to review his claim of trial counsel's ineffectiveness on direct appeal. *See Barnett*, 25 A.3d at 371. We therefore dismiss this claim without prejudice for Baker to raise it in a PCRA petition, along with any other claims for post conviction relief, if he so chooses.

Judgment of sentence affirmed.