J-A01006-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LOUISA ALEXANDRIA REYES | : | |
| | : | |
| Appellant | : | No. 132 MDA 2021 |

Appeal from the Judgment of Sentence Entered November 19, 2020
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s):  CP-40-CR-0004050-2018

BEFORE:  LAZARUS, J., NICHOLS, J., and KING, J.

MEMORANDUM BY LAZARUS, J.:          **FILED: APRIL 12, 2022**

Louisa Alexandria Reyes appeals from the judgment of sentence, imposed in the Court of Common Pleas of Luzerne County, after she entered an open guilty plea[1] to second-degree murder[2] and was sentenced to a term of imprisonment of 40 years to life.  After careful review, we affirm.

Reyes was charged with second-degree murder, burglary, robbery, theft by unlawful taking, arson, abuse of corpse, and criminal conspiracy.  The charges stemmed from the September 2018 death of Fred Boote (victim) in his Wilkes-Barre residence.  The victim was stabbed over 50 times and his lifeless body set on fire.

---

[1] The Commonwealth agreed to *nolle pros* Reyes' remaining charges, as well as a companion case of Reyes'.

[2] 18 Pa.C.S.A. § 1102(b).

Reyes was fourteen years old at the time of the murder and was certified to be tried as an adult. Reyes committed the crime with her co-defendant, Reynaldo Mercado, with whom Reyes was in a sexual relationship and who was more than seventeen years her senior.

Prior to the murder, Reyes and her family had lived with the victim for several months in early 2018. N.T. Co-Defendant Trial, 11/18/20, at 278. Shortly after moving out of the victim's home, Reyes and her family moved into the Mercado family home. Reyes gave conflicting stories to homicide detectives regarding the circumstances surrounding the victim's death.[3] Reyes first told detectives that she had gone to the victim's house to retrieve bed linens that her family had left there. When Reyes was in the victim's home, she followed him to his bedroom where, she alleged, he proceeded to make sexual advances towards her. At that point, Reyes claimed Mercado ran up the stairs, assaulted the victim with his fists, retreated to the kitchen where he retrieved a knife and, finally, returned to the bedroom and began stabbing the victim. N.T. Decertification Hearing, 2/21/20, at 36.

In her second version of events, Reyes told detectives that, on the day of the murder, Mercado became angry, grabbed a screwdriver to rob someone for cash, and ultimately ended up at the victim's home, where Reyes "went to the door and the plan was to [have her] act as a decoy to get [the victim] to

_____

[3] Prior to going to the victim's home, Reyes, with Mercado's help, with the intent to commit robbery, went to an elderly woman's residence, under the guise of needing to use her phone. *Id.* at 165-67. Fortunately, the woman did not let Reyes into her home.

allow her entry." *Id.* 38. Reyes said that after she gained entry to the home and followed the victim to his bedroom, Mercado entered the residence, rushed up the stairs, and confronted the victim. *Id.* at 39. At that point, Reyes ran to the kitchen where she grabbed a knife to threaten Mercado to stop assaulting the victim. *Id.* at 40. However, when she returned to the bedroom with the knife, Mercado grabbed the knife from Reyes and lunged at the victim to stab him. *Id.* Reyes said, at that moment, she retreated to another bedroom. *Id.* Reyes told detectives that after stabbing the victim repeatedly, Mercado told Reyes to retrieve cleaning supplies and flammable materials. Reyes located gasoline in the victim's garage and gave it to Mercado, who then poured it on the victim's body and lit it on fire. *Id.* at 41.

The victim's cell phone and twenty dollars were taken from the victim's home; the cell phone, which was discarded by Reyes, was recovered approximately 100 yards from the crime scene. Following the murder, Mercado and Reyes burned the clothes they were wearing during the crime. They absconded to New Jersey, after Reyes' mother cut Reyes' hair to change her appearance. *Id.* at 44-45.[4] Reyes and Mercado were located by the authorities at Reyes' uncle's New Jersey residence a few days following the murder.

_____

[4] In one of the version of events given by Reyes, Reyes told an investigator that: she went to the victim's house and asked the victim for a ride home; the victim texted Reyes' mother to let her know he was going to be giving her daughter a ride home; after the murder, Reyes secretly deleted those texts from the victim on her mother's phone. *Id.* at 172.

On November 16, 2018, Reyes filed a decertification motion to have her case transferred to juvenile court. On February 21, 2020, the court held a seven-hour decertification hearing, during which four witnesses testified on behalf of Reyes and three Commonwealth witnesses testified.

Doctor Frank Dattilio, a clinical and forensic pathologist, testified as a defense expert at Reyes' decertification hearing. Doctor Dattilio, who prepared a 27-page report that included a psychological evaluation and decertification assessment of Reyes, diagnosed Reyes as having antisocial personality traits with aggressive, sadistic, and negativistic features. N.T. Decertification Hearing, 2/21/20, at 122-23. Doctor Dattilio also concluded that Reyes suffered from oppositional disorder, depression, low self-esteem, and conduct disorder (adolescent-onset type). *Id.* at 122. Reyes' antisocial traits, Dr. Dattilio opined, were related to Reyes' involvement in the victim's death. *Id.* at 124. The expert also opined that due to Reyes' young age, many of her antisocial traits were not yet "galvanized" and, given the right type of intervention and treatment, "there is room for change." *Id.* at 125. Doctor Dattilio also determined that Reyes had a moderate to high risk for future violence without treatment. *Id.* at 128.[5]

_____

[5] Doctor Dattilio gave the following expert opinion regarding whether Reyes was amenable to treatment and rehabilitation as a juvenile:

> So[,] I've given a lot of thought, I had a lot of criteria, I spent a lot of time on this. **And it's my opinion that with all the factors that I outlined in my testimony and as contained in**

*(Footnote Continued Next Page)*

The Commonwealth's expert witness, Dr. John S. O'Brien, an expert in forensic psychiatry, also prepared a report of Reyes based on his clinical evaluation. Doctor O'Brien did not detect any "emotional upset" when Reyes relayed the events leading to the victim's death, *id.* at 235, and he concluded that because of Reyes' "enduring and pervasive maladaptive character traits,"

_____

> **this report, that I believe that she's amenable to treatment and rehabilitation prior to the age of 21.**
>
> **I think that out of her environment, getting treatment, focusing on these issues as we outlined and based on her intelligence, I think she can make it.**
>
> \* \* \*
>
> Because many of the cases that I do have already started at age ten, 11, they're involved, they're placed, they're in placement, there's failure to adjust in placement, they haven't—they violated probation. We don't have any of that.
>
> \* \* \*
>
> So[,] I recommend that she become involved in intensive treatment. And I recommend the two programs which, again today, I heard there's been changes[--]there's often changes in these programs because of the funding[,] because of restructuring.
>
> But essentially, a female program that would offer an intensive treatment program that is highly structured and would address the issues of her childhood, the abuse, the substance abuse that she had become involved with, address her depression, her personality issues and have a step-down program of some sort until she's 21. She'll need that.

*Id.* at 139-40, 146 (emphasis added).

- 5 -

she was going to be hard, if not impossible, to treat. *Id.* at 236-37. Specifically, Dr. O'Brien testified that Dr. Dattilio's diagnoses of Reyes (oppositional defiance disorder, conduct disorder (adolescent-onset type), and anti-social personality traits with aggressive, sadistic and negative features) is a very rare combination. *Id.* at 237-38. Doctor O'Brien classified Reyes as an individual who is "manipulative," *id.* at 250-51, and who has impaired social attachments to others. *Id.* at 265. Doctor O'Brien also rated Reyes as having a moderate to high risk of violence without treatment, assuming she is even amenable to treatment. *Id.* at 250-51. Finally, Dr. O'Brien opined that no one is "able to render [an opinion,] within a reasonable degree of medical, psychiatric, and psychological certainty," that Reyes is amenable to treatment and rehabilitation. *Id.* at 254, 277-79, 289.[6]

_____

[6] Doctor O'Brien specifically opined the following:

> I mean, the combination of variables, of her being very resistant to treatment and having the ability to represent herself as problem[-]free[,] in my opinion[,] creates a significant degree of difficulty treating individuals in assessing whether or not the efforts undertaken to assist her to basically at least gain in[sight] into what are suggested to be her personality traits is unlikely to be easy to assess, because you're never going to be able to, in my opinion, accept at face value for how she presents herself.

> \*     \*     \*

> I think that she's an individual who . . . doesn't present herself as an individual with prominent mental health issues.

*(Footnote Continued Next Page)*

On March 2, 2020, the court denied Reyes' motion to decertify, issuing findings of fact and conclusions of law after "thoroughly review[ing] the possibility of [Reyes'] rehabilitation." Trial Court Order, 1/13/21, at 1. Subsequently, Reyes pled guilty to second-degree murder of the victim during the commission of a burglary. In exchange, the Commonwealth agreed to withdraw all other charges. Reyes also agreed to testify against Mercado, who was ultimately convicted of first-degree murder.

On November 19, 2020, Reyes and Mercado were jointly sentenced; four of Reyes' family members testified at sentencing. The trial court did not order a presentence investigation (PSI) report, *see* Pa.R.Crim.P. 702, later noting that "a [PSI] would have added nothing regarding [Reyes] that was not ascertained during the [decertification] hearing." Trial Court Rule 1925(a) Opinion, 3/16/21, at [6-7].

On November 30, 2020, Reyes filed a motion to reconsider sentence, claiming that her sentence was manifestly excessive because the court did not consider the following mitigating evidence: her young age, lack of criminal history, possibility of rehabilitation, admission of guilt, acceptance of responsibility, cooperation with the Commonwealth, and expression of remorse at sentencing. *See* Motion to Reconsider Sentence, 11/30/20, at ¶¶

---

And certainly[,] if she presented that way for a clinical evaluation, I don't think that she would be recommended as amenable to undergo treatment.

*Id.* at 247.

12-13. The court denied the motion on January 13, 2021. Reyes filed a timely notice of appeal and Pa.R.A.P.1925(b) concise statement of errors complained of on appeal. On appeal, Reyes presents the following issues for our consideration:

(1) Did the [t]rial [c]ourt abuse its discretion by commenting on information unsupported by the record, not complying with 42 Pa.C.S.[A. §] 9712(b), and by failing to comply with Pa.R.Crim.P. 702 when ordering a sentence of 40 years to life imprisonment?

(2) Did the [t]rial [c]ourt err in accepting [Reyes'] open guilty plea after she rejected a 25 to 60 year deal to preserve appellate review of the court's decertification order, which involved the court's subject matter jurisdiction that is not waivable?

(3) Did the [t]rial [c]ourt grossly abuse its discretion by denying [Reyes'] decertification motion when the record reflects that the [t]rial [c]ourt held opinions about the case that are unsupported by the record?

Appellant's Brief, at 5.

Reyes first argues that the trial court erred in imposing its sentence where the court focused solely on the crime and overlooked Reyes' individualized sentencing needs. Appellant's Brief, at 18. Specifically, Reyes contends that the court considered information unsupported by the record, did not state the reasons for the sentence on the record,[7] and abused its

---

[7] Reyes' claim that the trial court failed to state the reasons for its sentence on the record, in violation of section 9721(b) of the Sentencing Code, is waived because she did not raise this issue before the sentencing court or in her motion to reconsider sentence. **See** Pa.R.A.P. 302. **See also Commonwealth v. Twitty**, 876 A.2d 433 (Pa. Super. 2005) (stating claims
*(Footnote Continued Next Page)*

- 8 -

discretion when it failed to order a PSI.[8]   These claims implicate the discretionary aspects of Reyes' sentence.

A challenge to the discretionary aspects of one's sentence is not appealable as a matter of right, but is only subject to review if the following four-part test is met:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post[-]sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of his appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

***Commonwealth v. Baker***, 72 A.3d 652, 662 (Pa. Super. 2013) (citation omitted).  "The determination of whether a particular issue poses a substantial question is to be made on a case-by-case basis."  ***Commonwealth v. Coulverson***, 34 A.3d 135, 142 (Pa. Super. 2011).

Instantly, Reyes raised the issue, that the court considered information unsupported by the record, in her motion for reconsideration of sentence. Additionally, Reyes filed a timely notice of appeal and included the issue in her

---

sentencing court failed to state adequate reasons on record for sentencing presents challenge to discretionary aspects of sentencing); ***Commonwealth v. Reeves***, 778 A.2d 691, 692-93 (Pa. Super. 2001) (by failing to raise specific claim that trial court failed to state reasons for sentence on record in post-sentence motion, claim waived because trial court deprived of opportunity to consider claim).

[8] A claim that the trial court failed to order a PSI or state sufficient reasons for dispensing with such a report raises a challenge to the discretionary aspects of one's sentence.  ***See Commonwealth v. Fiascki***, 886 A.2d 261 (Pa. Super. 2005).   Because Reyes did not raise this issue before the sentencing court or in her motion to reconsider sentence, we find that it has been waived.  Pa.R.A.P. 302.

Rule 1925(b) statement and Rule 2119(f) statement. **Baker**, **supra**. Thus, she has preserved the issue for review.

A claim that the trial court failed to consider the defendant's rehabilitative needs, alone, generally does not raise a substantial question. **Commonwealth v. Griffin**, 65 A.3d 932, 936-37 (Pa. Super. 2013). However, this Court has held that a substantial question has been presented when an appellant claimed that a "sentence takes no account of his rehabilitative needs and is disproportionate to the circumstances when adjudged as a whole." **Coulverson**, 34 A.3d at 143 (emphasis added). Thus, we conclude that Reyes has raised a substantial question and we may review the merits of the claim. **Id.**

> We review a trial court's sentencing determination for [an] abuse of discretion. Sentencing in Pennsylvania is individualized, and requires the trial court to fashion a sentence "that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant[.]" 42 Pa.C.S.A. § 9721(b). The trial court must also consider the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing. **Id.**

**Baker**, 72 A.3d at 662-63 (some citations omitted).

Reyes complains that the court's allegation that she was the mastermind of the crime and that she committed "a calculated, premediated killing" are "conclusions without support from the record." Appellant's Brief, at 24. By relying on these assumptions, Reyes claims the court's "unfavorable inferences about [her] and her level of culpability" require that her sentence be vacated. **Id.** at 25. We disagree.

- 10 -

As the trial court acknowledges in its opinion, although an intent to kill was mentioned during sentencing, the trial court sentenced Reyes to a standard-range sentence based on her guilty plea.[9] Witnesses testified at Reyes' decertification hearing that Reyes, who personally knew the victim, chose the victim as the target, gained entry to the victim's house, distracted the victim while Mercado entered the residence to rob him, retrieved the murder weapon (knife) from the victim's kitchen, and brought Mercado the gasoline that he used to set the victim's body on fire. N.T. Decertification Hearing, 2/21/20, at 54. *See also id.* at 57 (Wilkes-Barre Police Detective Matthew Stash, lead detective in case, characterized Reyes as "unremorseful" during investigative interview). Under such circumstances, where the sentence was based on evidence of record, we conclude that the sentencing court did not abuse its discretion. *Baker*, *supra*.

Next, Reyes asserts that her guilty plea was involuntarily entered into where she "did not understand the law to differentiate the Commonwealth's original 25-to-60 year deal from the terms of the open guilty plea she entered[,]" and where the only reason she rejected the original offer was so that she could preserve a non-waivable right. Appellant's Brief, at 18-19.

---

[9] We have liberally construed Reyes' instant claim to conclude that it was preserved in her motion to reconsider sentence. Technically, we could have also found this claim waived where the bases for Reyes' reconsideration motion were grounded in claims of excessiveness of sentence and failure to consider mitigating evidence.

In order to preserve a challenge to the validity of a guilty plea, a defendant "must either object during the plea colloquy, at the sentencing hearing, or through post-sentence motions." *Commonwealth v. Monjaras-Amaya*, 163 A.3d 466, 468-69 (Pa. Super. 2017). Failure to do so results in waiver. *Commonwealth v. Tareila*, 895 A.2d 1266, 1270 n.3 (Pa. Super. 2006); *see also* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Here, Reyes failed to raise this claim during the plea colloquy, at sentencing, or in her motion to reconsider sentence. Thus, we find it waived.[10]

Finally, Reyes claims that the trial court grossly abused its discretion when it denied her decertification motion, where she is amenable to rehabilitation. We disagree.

> The issue of certification between the juvenile and criminal divisions is jurisdictional and, therefore, not waivable. Decisions of whether to grant decertification will not be overturned absent a gross abuse of discretion. An abuse of discretion is not merely an error of judgment but involves the misapplication or overriding of the law or the exercise of a manifestly unreasonable judgment passed upon partiality, prejudice, or ill will.

---

[10] Even if we had not deemed the issue waived, we would find it meritless. The Commonwealth originally offered Reyes a 25-60 year sentence in exchange for her waiving her appellate rights. Reyes declined the offer. Because Reyes' attorney believed he could waive Reyes' right to appeal either the decertification decision or other rights, he advised her against the Commonwealth's initial plea offer. The trial court, however, was never privy to this initial offer, thus it cannot be deemed to have erred in ultimately accepting Reyes' open plea when it had no idea she had rejected the first offer.

* * *

When a case goes directly to [the] criminal division, the juvenile has the option of requesting treatment within the juvenile system through a transfer process of "decertification." [***Commonwealth v.***] ***Aziz***, 724 A.2d [371,] 373 [(Pa. Super. 1999)]. In determining whether to transfer such a case from [the] criminal division to [the] juvenile division, "the child shall be required to establish by a preponderance of the evidence that the transfer will serve the public interest."[11] 42 Pa.C.S.A. § 6322(a). ***See also***, ***Aziz***, 724 A.2d at 373.

_____

[11] **The burden** of establishing by a preponderance of evidence that the public interest is served by the transfer of the case to criminal court and that a child is not amenable to treatment, supervision or rehabilitation as a juvenile **shall rest with the Commonwealth unless the following apply**:

(i) **a deadly weapon as defined in 18 Pa.C.S. § 2301 (relating to definitions) was used and the child was 14 years of age at the time of the offense**; or

(ii) the child was 15 years of age or older at the time of the offense and was previously adjudicated delinquent of a crime that would be considered a felony if committed by an adult; **and**

(2) **there is a *prima facie* case that the child committed a delinquent act which, if committed by an adult, would be classified as** rape, involuntary deviate sexual intercourse, aggravated assault as defined in 18 Pa.C.S. § 2702(a)(1) or (2) (relating to aggravated assault), **robbery** as defined in 18 Pa.C.S. § 3701(a)(1)(i), (ii) or (iii) (relating to robbery), robbery of motor vehicle, aggravated indecent assault, kidnapping, voluntary manslaughter, an attempt, conspiracy or solicitation to commit any of these crimes **or an attempt to commit murder** as specified in paragraph (2)(ii) of the definition of "delinquent act" in section 6302.

**If either of the preceding criteria are met, the burden of establishing by a preponderance of the evidence that retaining the case under this chapter serves the public interest and that the child is amenable to treatment,**

*(Footnote Continued Next Page)*

- 13 -

*Commonwealth v. Sanders*, 814 A.2d 1248, 1250 (Pa. Super. 2003).

Pursuant to 42 Pa.C.S.A. § 6322(a), the decertification court shall consider the factors contained in section6355(a)(4)(iii) in determining whether the child has established that the transfer will serve the public interest. The statutorily set factors to be considered are as follows:

> (A) the impact of the offense on the victim or victims;
>
> (B) the impact of the offense on the community;
>
> (C) the threat to the safety of the public or any individual posed by the child;
>
> (D) the nature and circumstances of the offense allegedly committed by the child;
>
> (E) the degree of the child's culpability;
>
> (F) the adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal justice system; and
>
> (G) whether the child is amenable to treatment, supervision[,] or rehabilitation as a juvenile by considering the following factors:
>
>> (I) age; (II) mental capacity; (III) maturity; (IV) the degree of criminal sophistication exhibited by the child; (V) previous records, if any; (VI) the nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the juvenile court to rehabilitate the child; (VII) whether the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction;

_____

**supervision or rehabilitation as a juvenile shall rest with the child**.

42 Pa.C.S.A. § 6355(g) (italics and emphasis added).

> (VIII) probation or institutional reports, if
> any; (IX) any other relevant factors[.]

42 Pa.C.S.A. § 6355(a)(4)(iii).

Instantly, Reyes failed to prove, by a preponderance of the evidence, that transferring her case to juvenile court would "serve the public interest." **Sanders**, **supra** at 1250. After considering the factors outlined in section 6355, including expert testimony,[12] the trial court was within its discretion in concluding that Reyes was not amenable to rehabilitation prior to the expiration of the juvenile court's jurisdiction. **See** Trial Court's Findings of Fact and Conclusions of Law, 3/2/20, at ¶¶ 22-61 (experts agreeing that no one can ensure, with certainty, Reyes could be rehabilitated by time she turns twenty one; Reyes' diagnoses requires "intense treatment;" Reyes has moderate-high risk of future violent behavior without treatment; six years of dispositional alternatives, until Reyes turns twenty one, not adequate to rehabilitate her; Reyes participated in concealing crime by changing appearance and giving conflicting stories to authorities); **see also** N.T. Decertification Hearing, 2/21/20, at 184 (defense expert testifying that, while optimistic Reyes would be excellent candidate to be rehabilitated by age of 21, he could not assure that Reyes would be rehabilitated by that time); **Id.** at 254, 277-79, 289 (Commonwealth expert opining, that no one able to render opinion, within reasonable degree of medical, psychiatric, and

---

[12] Both experts agreed that Reyes suffers from a lifelong history of neglect and emotional disregard and that her mother has not been effective in addressing issues in Reyes' life or even be involved in her life.

psychological certainty, that Reyes is amenable to treatment and rehabilitation due to her "enduring and pervasive maladapted character traits");[13] *Id.* at 236-37 (Commonwealth expert testifying it would be hard, if not impossible, to treat Reyes).

The trial court did not commit a gross abuse of discretion in denying Reyes' decertification motion where the decision is supported by the record. *Sanders*, *supra*. *See Commonwealth v. Sourbeer*, 422 A.2d 116 (Pa. 1980) (in considering psychiatric testimony, if rehabilitation could not be assured during child's minority while subject to juvenile court jurisdiction, child has failed to establish that she was amenable to juvenile rehabilitation).[14]

Judgment of sentence affirmed.

---

[13] While Dr. Dattilio indicated that Reyes told him she was "very remorseful for her involvement with the instant offense and that Reyes "took responsibility for what she did," N.T. Decertification Hearing, 2/21/20, at 109, 136, Dr. O'Brien testified that he did not detect any "emotional upset" when Reyes relayed the events leading to the victim's death. *Id.* at 235. *See Summers v. Certainteed Corp.*, 997 A.2d 1152, 1161 (Pa. 2010) (credibility of expert witnesses, as well as weight to be given their conclusions, to be determined by trier of fact) (citation omitted).

[14] Luzerne County Juvenile Probation Officer Thomas Lavan testified that juvenile placement automatically ends when an individual turns 21 years old. Moreover, juveniles are "seldom" placed into a secure placement facility after an intake interview. N.T. Decertification Hearing, 2/21/20, at 13. Rather, they are more likely to be released on probation. *Id.* at 12. In addition, one of the programs specifically recommended for Reyes by her expert, Dr. Dattilio, the Adolescent Resource Center (ARC), no longer exists for females. *Id.* at 13. Additionally, the majority of juvenile facilities in the Commonwealth are privately owned and, thus, have the right to reject accepting a juvenile into their facilities.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/12/2022