J-S78039-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,    :    IN THE SUPERIOR COURT OF
                                        :                  PENNSYLVANIA
              Appellee            :
                                          :
              v.                     :
                                          :
ANGEL MANUEL CASANOVA,          :
                                          :
             Appellant          :          No. 495 MDA 2014

Appeal from the Judgment of Sentence entered on October 30, 2013
in the Court of Common Pleas of Lebanon County,
Criminal Division, No. CP-38-CR-0001604-2012

BEFORE: GANTMAN, P.J., JENKINS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED JANUARY 07, 2015**

Angel Manuel Casanova ("Casanova") appeals from the judgment of sentence imposed following his conviction of one count each of drug delivery resulting in death and delivery of a controlled substance.[1] We affirm.

Casanova sold heroin, resulting in a fatal overdose by an individual who used the substance. Following a trial, a jury convicted Casanova of the above-mentioned crimes. The trial court sentenced Casanova to an aggregate prison sentence of 9 to 40 years. Casanova filed a timely post-sentence Motion alleging ineffective assistance of trial counsel, Harry Fenton, Esquire ("Attorney Fenton"). The trial court appointed new counsel, who filed an amended post-sentence Motion alleging ineffective assistance of Attorney Fenton.

---

[1] **See** 18 Pa.C.S.A. § 2506(a); 35 P.S. § 780-113(a)(30).

On February 10, 2014, the trial court held a hearing on the amended post-sentence Motion. At the start of the hearing, Casanova waived his right to pursue a first PCRA petition under the Post Conviction Relief Act ("PCRA").[2] Thereafter, the trial court took the testimony of Casanova and Attorney Fenton. Following the hearing, the trial court denied the Motion. Casanova filed a timely Notice of Appeal and a Concise Statement of Matters Complained of on Appeal.

On appeal, Casanova raises the same three issues that he presented to the trial court in his amended post-sentence Motion:

1. Whether Casanova was denied a fair trial when [Attorney Fenton] was ineffective for failing to meet with him in order to prepare for trial[?]

2. Whether Casanova was denied a fair trial when [Attorney Fenton] was ineffective for failing to adequately prepare to cross-examine witnesses[?]

3. Whether Casanova was denied a fair trial when [Attorney Fenton] was ineffective for advising him not to take the stand without discussing the reason for not doing so[?]

Brief for Appellant at 4 (issues rephrased for ease of reference).

As Casanova's claims are related, we will address them together. Casanova contends that Attorney Fenton spoke with him on only one occasion, via telephone, before trial, and that, due to their minimal contact, Attorney Fenton could not have effectively evaluated Casanova's conduct. *Id*. at 8. Casanova asserts that, by not meeting with him regularly prior to

---

[2] *See* 42 Pa.C.S.A. §§ 9541-9546.

trial, Attorney Fenton potentially impaired Casanova's right to actively participate in his defense, resulting in undue prejudice to Casanova. *Id*. at 8-9. Casanova claims that, because of their minimal contact prior to trial, Attorney Fenton was not prepared to cross-examine witnesses at trial. *Id*. at 9. Finally, Casanova contends that Attorney Fenton was ineffective for advising him not to testify on his own behalf, without discussing with him the reasons for this trial strategy. *Id*. at 10-11.

Litigation of ineffectiveness claims is not generally a proper component of a defendant's direct appeal, and is presumptively deferred for collateral attack under the PCRA. *See Commonwealth v. Holmes*, 79 A.3d 562, 578 (Pa. 2013) (establishing a deferral rule for ineffectiveness claims litigated after its decision in *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002)). However, the Pennsylvania Supreme Court has recognized two exceptions to the rule that ineffectiveness claims should be deferred until collateral review, both falling within the discretion of the trial court:

> First, we held that trial courts retain discretion, in extraordinary circumstances, to entertain a discrete claim of trial counsel ineffectiveness if the claim is both apparent from the record and meritorious, such that immediate consideration best serves the interest of justice. Second, we held that trial courts also have discretion to entertain prolix claims of ineffectiveness if there is a good cause shown and the unitary review thus permitted is accompanied by a knowing and express waiver by the defendant of the right to pursue a first PCRA petition.

*Commonwealth v. Arrington*, 86 A.3d 831, 856-57 (Pa. 2014).

Here, the trial court exercised its discretion to entertain Casanova's ineffectiveness claims. The trial court appointed new counsel for Casanova, who filed an amended post-sentence Motion, and thereafter conducted a hearing to develop an evidentiary record pertaining to the ineffectiveness claims. At the hearing, following a colloquy on the record, Casanova waived his right to PCRA review of his ineffectiveness claims. *See* Trial Court Opinion, 4/24/14, at 9. Following the hearing, the trial court determined that Casanova's ineffectiveness claims lacked merit and denied Casanova's amended post-sentence Motion.

In its Pa.R.A.P. 1925(a) Opinion, the trial court points out that the first exception to the rule that ineffectiveness claims should be deferred until collateral review does not apply because Casanova's ineffectiveness claims were not apparent from the trial record. *See* Trial Court Opinion, 4/24/14, at 9. With regard to the second exception, the trial court posits that it does not apply because Casanova's claims are not multiple or prolix, and that "it is arguable as to whether good cause was shown." *Id*. Nevertheless, because Casanova's ineffectiveness claims were addressed by the trial court, following a full evidentiary hearing in which Casanova was represented by new counsel, and because Casanova waived his right to pursue a first PCRA petition, we will address the merits of his ineffectiveness claims on appeal, in the interests of judicial economy.

In its Opinion, the trial court set forth the relevant law, addressed Casanova's ineffectiveness claims, and determined that they lack merit. *See id*. at 10-15.  We agree with the sound reasoning of the trial court and affirm on this basis as to Casanova's claims on appeal.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/7/2015

# IN THE COURT OF COMMON PLEAS OF LEBANON COUNTY, PENNSYLVANIA

## CRIMINAL DIVISION

COMMONWEALTH OF
PENNSYLVANIA                        :
                                    :
                                    :
        v.                          :        No: CP-38-CR-1604-2012
                                    :
ANGEL MANUEL CASANOVA               :

APPEARANCES:
Nichole Eisenhart, Esq. for the Commonwealth
Erin Zimmerer, Esq. for the Appellant

## OPINION, KLINE, J., APRIL 23, 2014

Before the Court is the Appellant's Concise Statement of Errors Complained of on Appeal. For the reasons set forth herein, we find the alleged errors lack merit, as specified below.

## FACTS AND PROCEDURAL HISTORY

The Appellant was charged with Drug Delivery Resulting in Death and Delivery of a Controlled Substance pursuant to 18 Pa.C.S.A. §2506(a) and 35 P.S. §780-113(a)(30)[1], respectively. A jury trial was held on September 13, 2013. The jury found the Appellant guilty of both counts. On October 30, 2013, the Appellant was sentenced as follows, in relevant part:

> Count I, Drug Delivery Resulting in Death: to pay the costs of prosecution, to pay a fine of $1,000, to pay restitution to certain individuals, and to be incarcerated in a state correctional facility for a minimum of 9 years and a maximum of 40 years;

---

[1] Known as the Controlled Substance Drug, Device, and Cosmetic Act.

1

Count II, Violation of the Controlled Substance Drug, Device, and Cosmetic Act: Merged with Count I.

(October 30, 2013 Sentencing Order).

On October 30, 2013, Appellant, represented by trial counsel Harry Fenton, Esq., filed a timely Post-Sentence Motion. In the Post-Sentence Motion, Attorney Fenton indicated that he believed that there were not any viable, non-frivolous issues to raise on appeal. Further, when questioned what issues were to be raised on appeal, the Appellant insisted on ineffective assistance of counsel. Attorney Fenton asserted that the interests of judicial economy would be served by appointing new counsel and developing a record of the ineffective assistance of counsel claims now, as opposed to filing a frivolous appeal and having to address the claims at a later date.[2]

The law firm of Montgomery & Zimmerer was appointed to represent the Appellant on any claims of ineffective assistance of counsel, and new

---

[2] The Court notes the procedural posture of this case became somewhat tangled at this juncture. The proposed order that was filed with the Post-Sentence Motion was never signed. Instead, on November 1, 2013, in an effort to comply with the 10 day time period in which a trial court is to take action on a Post-Sentence Motion as set forth in Pa.R.Crim.P. 720(B)(2)(a), this Court dictated a Post-Sentence Scheduling Order appointing counsel for the Appellant to address the claims. Counsel was also permitted to file supplemental claims, and a hearing was to be scheduled. For some reason, this Order was never filed and made a part of the record. Therefore, in an effort to preserve his client's interests, Attorney Fenton filed a Notice of Appeal on November 13, 2013. A Concise Statement of Errors Complained of on Appeal was filed, where counsel indicated that he believed no appealable issues were to be raised, and he intended to file an *Anders/Mclendon* brief. It was clear that the appeal was premature as the Post-Sentence Motion was still pending since it was never denied by Court Order or by operation of law. If a defendant files a timely post-sentence motion, the notice of appeal shall be filed within 30 days of the entry of the order deciding the motion. Pa.R.Crim.P. 720(A)(2)(a). A comment to the Rule states, "No direct appeal may be taken by a defendant while his or her post-sentence motion is pending." When this issue came to light, the Court filed the original Post-Sentence Scheduling Order on November 21, 2013. The Court cited Pa.R.A.P. 1701(a) and (b)(1), stating that although the general rule is that a trial court cannot take action in a matter once an appeal is filed, a trial court can take action to correct formal errors in papers in the matter. The Court believed that the matter must be corrected and not delayed any further due to a clear error. Therefore, the original Post-Sentence Scheduling Order that should have been filed on November 1, 2013 was filed. Attorney Fenton filed a praecipe to withdraw the appeal in the Superior Court on or about November 25, 2013. The appeal was discontinued on December 3, 2013.

2

counsel was permitted to file supplemental claims. Erin Zimmerer, Esq. filed an Amended Post-Sentence Motion on December 6, 2013. Appellant argued the following:

> I. The Appellant was denied a fair trial when his counsel was ineffective for failing to meet with him in order to prepare for trial.

> II. The Appellant was denied a fair trial as counsel was ineffective because he advised him not to take the stand but did not discuss with him why.

> III. Trial counsel was ineffective because he was unprepared for trial by failing to meet with him and was not adequately prepared to cross-examine witnesses.

(Amended Post-Sentence Motion filed on December 6, 2013). Appellant requested an acquittal of the charges or a new trial.

A hearing was originally scheduled for January 23, 2013 but was continued. Appellant filed a brief in support of his position on January 15, 2014. The Commonwealth filed a brief in support of its position on February 6, 2014. The hearing on the Post-Sentence Motion was held on February 10, 2014. At the conclusion of the hearing, this Court denied the Post-Sentence Motion.[3]

The Appellant filed a timely Notice of Appeal on March 11, 2014. Pursuant to our 1925(b) Order, Appellant filed his Concise Statement of Errors Complained of on Appeal on April 1, 2014. Appellant raises the same three alleged errors set forth above. The case is thus before us and ripe for disposition.

---

[3] This denial was made within the 120 day deadline from the filing of the original Post-Sentence Motion on October 30, 2013. See Pa.R.Crim.P. 720(B)(3)(a). The filing of the Amended Post-Sentence Motion did not toll the original deadline. Comment to Pa.R.Crim.P. 720 states, "Paragraph (B)(1)(b) permits the trial judge to entertain a supplemental post-sentence motion at his or her discretion, as long as the decision on the supplemental issue(s) is made within the time limits of paragraph (B)(3)."

3

## DISCUSSION

Pa.R.Crim.P. 720(B) permits a defendant in a criminal case to file an optional post-sentence motion. A post-sentence motion may include a motion for judgment of acquittal and a motion for a new trial. Pa.R.Crim.P. 720(B)(1)(a)(ii) and (iv). Appellant raises three ineffective assistance of counsel claims in his post-sentence motion. Prior to addressing this issue on the merits, it must first be determined whether the issue is properly before the Superior Court on direct appeal. (See *Com. v. Baker*, 72 A.3d 652, 644 (Pa. Super. 2013)).

The general rule in Pennsylvania is that a defendant should wait until collateral review to raise ineffective assistance of counsel claims. *Com. v. Grant*, 813 A.2d 726 (Pa. 2002). However, the Supreme Court of Pennsylvania has ruled that an exception to this general rule exists when the claims have been raised and fully developed at a hearing in the trial court. *Com. v. Bomar*, 826 A.2d 831 (Pa. 2003).[4]

In *Bomar*, the Supreme Court of Pennsylvania found that the claims of ineffective assistance of counsel were properly raised and preserved in the trial court. Following sentencing, trial counsel withdrew from the case and present counsel entered the matter and filed post-sentence motions on defendant's behalf. The trial court conducted hearings on the post-sentence motions at which defendant's trial counsel testified. Moreover, the trial court addressed the ineffectiveness claims in an opinion.

The Supreme Court stated, "In contrast to the more common situation where ineffectiveness allegations are raised for the first time on appeal and the trial court is excluded from the review process, here, this Court has the

---

[4] Although *Bomar* was decided after the decision in *Grant*, it involved ineffective assistance of counsel claims raised in postverdict motions prior to the *Grant* decision.

4

benefit of the trial judge's evaluation of trial counsel's conduct in reviewing the claims, rendered close in time to the trial." *Bomar*, 826 A.2d at 854. The Supreme Court of Pennsylvania ultimately held that the circumstances of that case were an exception to the general rule of deferral in *Grant*, and the Court proceeded to consider the ineffectiveness claims.

The law on when ineffective assistance of counsel claims should be raised has evolved since the decision in *Bomar*. In *Com. v. Wright*, 961 A.2d 119, 148 n. 22 (Pa. 2008), the Supreme Court of Pennsylvania held "prolix collateral claims should not be reviewed on post-verdict motions unless the defendant waives his right to PCRA review, because the PCRA does not afford the right to two collateral attacks." In *Com. v. Liston*, 977 A.2d 1089, 1096 (Pa. 2009) (Castille, C.J., concurring), the holding in *Bomar* was limited to pre-*Grant* cases and directed the lower courts "not to create or indulge unitary, hybrid review in the post-verdict and direct appeal context, unless such review is accompanied by an express, knowing and voluntary waiver of PCRA review."

The Superior Court of Pennsylvania recognized these developments in *Com. v. Barnett*, 25 A.3d 371 (Pa. Super. 2011), in which a defendant raised ineffectiveness of counsel claims on direct appeal pursuant to *Bomar*. In *Barnett*, the Superior Court held "[b]ased on the opinion of a majority of participating justices in *Wright* and *Liston*, this Court cannot engage in review of ineffective assistance of counsel claims on direct appeal absent an 'express, knowing and voluntary waiver of PCRA review.'" *Barnett*, 25 A.3d at 377. "With the proviso that a defendant may waive further PCRA review in the trial court, absent further instruction from our Supreme Court, this Court, pursuant to *Wright* and *Liston*, will no longer consider ineffective assistance of counsel claims on direct appeal." *Barnett*, 25 A.3d at 377.

5

In *Baker, supra.*, the Superior Court of Pennsylvania declined to review a claim alleging ineffective assistance of counsel on appeal after finding that the defendant did not make a valid waiver of the Post-Conviction Relief Act (hereinafter "PCRA"). One of the arguments on direct appeal was that the trial court erred by denying his post-sentence motion and finding that trial counsel was effective.

Prior to addressing this issue on the merits, the Superior Court provided a thorough analysis as to whether the issue was properly before it on direct appeal. The Superior Court acknowledged *Grant, Bomar, Wright, Liston,* and *Barnett.* The Superior Court concluded that the record did not constitute a valid waiver to PCRA review in its entirety, and it was unable to review the ineffectiveness claims, citing *Barnett.* The Court also discussed what constituted a valid PCRA waiver. The Court specifically stated:

> As discussed, and pursuant to *Liston, Wright* and *Barnett,* in order for a defendant to raise counsel's ineffectiveness on direct appeal, he or she must expressly, knowingly and voluntarily waive his or her right to PCRA review. Thus, established waiver principles must be applied to waiver of PCRA review when a defendant wishes to expedite the review of ineffective assistance of counsel claims by way of a post-trial motion. Consequently, a defendant must participate in an on-the-record colloquy, which ensures the defendant is aware of the rights being waived, i.e., the "essential ingredients" of PCRA review. This includes, but is not limited to, an explanation of (1) the eligibility requirements for PCRA relief; (2) the right to be represented by counsel for a first PCRA petition; (3) the types of issues that could be raised pursuant to the PCRA that are now being given up; and (4) the PCRA is the sole means of obtaining nearly all types of collateral relief. The trial court must also ensure the defendant has made the decision to waive his right to PCRA review after consulting with counsel (if any) and in consideration of his rights as they have been explained in the colloquy.

6

*Baker*, 72 A.3d at 668.

The Superior Court in *Baker* also acknowledged that the Supreme Court of Pennsylvania granted allowance of appeal in *Com. v. Holmes*, 996 A.2d 479 (Pa. 2010) to determine the following issue: whether claims of ineffective assistance of counsel, which were the subject of a nunc pro tunc direct appeal: (1) were reviewable on direct appeal under *Bomar*; (2) should instead be deferred to collateral review under the general rule in *Grant*; or (3) should instead be deemed reviewable on direct appeal only if accompanied by a specific waiver of the right to pursue a first PCRA petition as of right.

On October 30, 2013, the Supreme Court of Pennsylvania issued its opinion disposing of the issue. In summary, our Supreme Court ruled as follows:

> By way of summary, we hold that *Grant's* general rule of deferral to PCRA review remains the pertinent law on the appropriate timing for review of claims of ineffective assistance of counsel; we disapprove of expansions of the exception to that rule recognized in *Bomar*; and we limit *Bomar*, a case litigated in the trial court before *Grant* was decided and at a time when new counsel entering a case upon post-verdict motions was required to raise ineffectiveness claims at the first opportunity, to its pre-*Grant* facts. We recognize two exceptions, however, both falling within the discretion of the trial judge. First, we appreciate that there may be extraordinary circumstances where a discrete claim (or claims) of trial counsel ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice; and we hold that trial courts retain their discretion to entertain such claims.
>
> Second, with respect to other cases and claims, including cases such as *Bomar* and the matter sub judice, where the defendant seeks to litigate multiple or prolix claims of

7

counsel ineffectiveness, including non-record-based claims, on post-verdict motions and direct appeal, we repose discretion in the trial courts to entertain such claims, but only if (1) there is good cause shown, and (2) the unitary review so indulged is preceded by the defendant's knowing and express waiver of his entitlement to seek PCRA review from his conviction and sentence, including an express recognition that the waiver subjects further collateral review to the time and serial petition restrictions of the PCRA. In other words, we adopt a paradigm whereby unitary review may be available in such cases only to the extent that it advances (and exhausts) PCRA review in time; unlike the so-called *Bomar* exception, unitary review would not be made available as an accelerated, extra round of collateral attack as of right. This exception follows from the suggestions of prior Court majorities respecting review of prolix claims, if accompanied by a waiver of PCRA review.

*Com. v. Holmes,* 79 A.3d 562, 563-564 (Pa. 2013). On February 6, 2014, the Superior Court's decision in *Barnett* was also vacated, and the matter was remanded to the common pleas court for further proceedings consistent with the holding in *Holmes. Com. v. Barnett,* 84 A.3d 1060 (Pa. 2014).

Turning to the instant case, trial counsel cited *Bomar* and requested a hearing for the claims to be heard for the following reason: "Judicial economy will be served by permitting an evidentiary record on the ineffective assistance claim to be developed now, to be reviewed on direct appeal, rather than the alternative of filing a baseless and completely inconsequential appeal which will inevitably result in either (1) a remand or (2) later collateral attack." (Post-Sentence Motion, paragraph 8). At the time, no specific claims were raised, but new counsel raised three claims in the Amended Post-Sentence Motion.

When the original Post-Sentence Motion was filed, a hearing was

8

scheduled based on the ruling in *Bomar*. At the hearing, a PCRA wavier on the record colloquy was conducted based on the tenants of *Baker*. The law is now clear that there are only two exceptions which permit a trial court to exercise its discretion to hear the claims: (1) extraordinary circumstances where a discrete claim or claims of trial counsel ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice; and (2) where the defendant seeks to litigate multiple or prolix claims of counsel ineffectiveness, including non-record-based claims, but only if there is good cause shown, and the unitary review is preceded by the defendant's knowing and express waiver of his entitlement to seek PCRA review. *Holmes*, 79 A.3d at 563-564.

This case does not fall under the first exception as it does not constitute an extraordinary case because the claims were not so apparent from the record, and they were not meritorious. The specific arguments were not known to the Court until the December 6, 2013 Amended Post-Sentence Motion was filed, and a hearing was required to determine the merits of the claims.

Turning to the second exception, although a waiver of PCRA review was conducted on the record, the claims are not multiple or prolix. Rather, they are straightforward. Also, it is arguable as to whether good cause was shown. The Appellant was sentenced to a minimum of 9 years, and he would have ample time to seek PCRA relief. Trial counsel asserted in the Post-Sentence Motion that the interests of judicial economy would be served by appointing new counsel and developing a record now as opposed to later. Nonetheless, the hearing on the merits was held, and the case is currently on appeal. Accordingly, in the event the Superior Court determines that the claims should not have been reviewed in accordance with *Holmes*, the Court

9

respectfully requests that the claims be dismissed.

However, in the event the Superior Court determines that this case falls within the requirements of *Holmes*, the Court will now address the merits. At the hearing, an on the record colloquy was conducted where the Appellant waived his right to PCRA review. The Appellant was questioned about the eligibility requirements for PCRA relief. (N.T. 5-6). He was questioned if he understood that he had the right to be represented by counsel for a first PCRA petition and the types of issues that could be raised pursuant to the PCRA that are now being given up. (N.T. 6-8). Further, he was asked whether he understood that the PCRA is the sole means of obtaining nearly all types of collateral relief. (N.T. 8). The Commonwealth then asked, "And your attorney has discussed the fact with you that if you proceed with this ineffectiveness claim during your post-sentence rights that you then cannot file the PCRA," to which the Appellant responded "Yes." (N.T. 8). The Court suggests that this is a valid PCRA waiver, and we will now address the ineffectiveness claims.

Article I, Section 9 of the Pennsylvania Constitution, guarantees an accused the right to counsel in criminal prosecutions. This section provides,

> In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage...

PA Const. Art. 1, §9. The right to counsel includes the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984), citing *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970). The Pennsylvania Supreme Court has ruled, "The petitioner must still show, by a

10

preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Com. v. Kimball*, 724 A.2d 326, 333 (Pa. 1999). This requires a three-part test: "(1) that the claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and, (3) that, but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." *Id.* "...[W]here the petitioner has demonstrated that counsel's ineffectiveness has created a reasonable probability that the outcome of the proceedings would have been different, then no reliable adjudication of guilt or innocence could have taken place." *Id.* "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." *Com. v. Busanet*, 817 A.2d 1060, 1066 (Pa. 2002).

### Failure to Meet with Appellant in Order to Prepare for Trial

Appellant first argues that trial counsel was ineffective because he did not meet with him in order to prepare for trial. Appellant testified that he was in the Lebanon County Correctional Facility for almost a year, and Attorney Fenton met with him only one time. (N.T. 10). Appellant had an issue with the fact that a certain witness had a relationship with the deceased. (N.T. 14). Appellant claimed that he had issues about other witnesses of the prosecution because they all had pending cases. When questioned what those issues were, the Appellant stated, "I mean I don't know how to explain that." (N.T. 15).

Attorney Fenton testified that he was able to determine four times when he had spoken with the Appellant prior to trial. (N.T. 19). The first time was in court for the arraignment, but this was more of a mere

11

introduction. (N.T. 20). Attorney Fenton further testified he met with him in the jail sometime prior to January 25, 2013, and he received a telephone call that occurred on March 28, 2013. (N.T. 20). Attorney Fenton again met with the Appellant at the jail three or four days before trial. (N.T. 20-21).

Attorney Fenton also testified that he sent numerous letters to Appellant on the following dates: December 10, 2012, December 27, 2012, December 31, 2012, January 25, 2013, March 28, 2013, April 15, 2013, two letters on April 17, 2013, May 29, 2013, July 30, 2013, and August 20, 2013. (N.T. 21-22). Attorney Fenton said that the Appellant sent him letters on the following dates: December 27, 2012, January 4, 2013, April 1, 2013, April 17, 2013, April 28, 2013, August 6, 2013, and August 11, 2013. (N.T. 21-22).

Attorney Fenton discussed the Appellant's case with him on the phone and in the letters. (N.T. 22-23). Attorney Fenton believed that the only two possible defenses would be to either assert that the drugs that killed the deceased did not come from Appellant or that the deceased did not die from the drugs. (N.T. 23). Attorney Fenton said that he discussed this with the Appellant. (N.T. 24).

Attorney Fenton testified that after his meetings and letters with the Appellant, he did not believe that there were any unanswered questions or issues that were not addressed. (N.T. 26). Attorney Fenton believed that the Appellant was only upset because he was being kept in the Lebanon County Correctional Facility. (N.T. 22, 26).

The Court found Attorney Fenton's testimony to be credible. The Appellant's assertion that Attorney Fenton only met with him once was not accurate. The record indicates that they communicated in person and by letters. Attorney Fenton testified to approximately 11 letters he sent to the Appellant. Attorney Fenton provided three of the letters, marked as Exhibit

12

1. To suggest that Attorney Fenton only communicated with him one time or that Attorney Fenton was not prepared for trial is a distortion of the truth. The Court found that this claim lacked arguable merit. (N.T. 43-44). Accordingly, the Appellant is not entitled to relief.

### Discussion of Appellant Not Taking the Stand

Appellant testified that Attorney Fenton advised him not to take the stand, "so I went by his word—by what he said." (N.T. 11). Appellant said that he did not have any further discussions about why he should not have testified. (N.T. 11). On cross-examination, the record indicates:

> Answer: He told me don't testify, because he didn't want me to—he didn't tell me why or nothing.
>
> Question: And you interpreted that as meaning he is looking out for himself, cause he is working with the Commonwealth?
>
> Answer: Yeah.

(N.T. 17).

Attorney Fenton testified what his reasons were as to why he believed the Appellant should not testify, and he explained his reasons to the Appellant. (N.T. 27-29). Attorney Fenton said that there was not a lot for the Appellant to contribute as the focus was on the toxicology reports and another witness. (N.T. 27). Further, his testimony would have nothing to do with intent as nobody contended that he intended to harm the deceased. (N.T. 28). Attorney Fenton said that it was "really just a strict liability case," "so there was really no need for him to testify." (N.T. 28). Further, it was ultimately the Appellant's final decision to not testify. (N.T. 29).

This claim lacks arguable merit. This Jurist found that Attorney Fenton discussed with the Appellant why he should not take the stand as

13

evidenced in some of his letters. (N.T. 45). Even assuming that the claim was one of arguable merit, the second prong of the test is not met because Attorney Fenton had a reasonable basis for his decision, and he provided his reasons to the Court as to why he believed the Appellant should not testify. Once again, the Court finds Attorney Fenton to be credible, and the Appellant's claim fails.

### Cross-Examination of Witnesses

Finally, the Appellant argues that Attorney Fenton was not adequately prepared to cross-examine witnesses. Appellant believed that there were inconsistent statements by witnesses that he felt were not adequately brought to light. (N.T. 12). The record reveals the following:

> Question: Now, you also stated that you believe that your trial counsel was unprepared, did not properly cross-examine witnesses; what did you mean by that?
>
> Answer: When I went through the discovery package a star witness that I had-he had an affair with the deceased, and he didn't even brung that up. I seen a couple of other issues that it was in my discovery package, and he only brung up something about that he lied, something like that, on the statements that he make—I mean entered. He was trying to look out for himself.

(N.T. 11-12).

Attorney Fenton testified that one of the Commonwealth's witnesses was a confidential informant, and he had made a deal with the District Attorney that if he was told who the witness was prior to trial, he would not tell the Appellant because the witness was concerned for his personal safety. (N.T. 30). With regard to the "star witness" that Appellant referred to, Attorney Fenton said that he was able to focus on that witness' changed statements during cross-examination, and he made that clear to the jury.

14

(N.T. 31). Attorney Fenton believed that this witness made inconsistent statements, and he would say anything in order to save himself. (N.T. 32). This was something that Attorney Fenton conveyed on cross-examination as well as his arguments to the jury. (N.T. 32). Further, with regard to the relationship that the witness had with the deceased, Attorney Fenton did not think it was relevant, and it was a mere allegation at the time. (N.T. 31-32).

Once again the Court finds that this claim was not one of arguable merit. This Jurist recollects Attorney Fenton conducting a vigorous cross-examination of the witness at the trial. (N.T. 46). Further, this Jurist was of the belief that if Attorney Fenton was not able to make the jury believe him about the inconsistencies, an alleged affair would not have changed the outcome either. (N.T. 46-47). Accordingly, this alleged error lacks merit.

To conclude, after listening to the testimony provided at the hearing on the Post-Sentence Motion, this Jurist found that the Appellant is of the belief that his trial counsel was ineffective merely because he got convicted. (N.T. 43, 47). This is not grounds to find counsel ineffective. Accordingly, all alleged errors lack merit. We now turn this case over to the Superior Court for review. We will enter an Order consistent with the foregoing.

15