J. S54044/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| BARRY L. SOLDRIDGE, JR., | : | |
| | : | |
| Appellant | : | No. 1396 EDA 2015 |

Appeal from the PCRA Order April 17, 2015
In the Court of Common Pleas of Northampton County
Criminal Division No(s).: CP-48-CR-0003940-2010

BEFORE: BOWES, PANELLA, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:              **FILED OCTOBER 15, 2015**

Appellant, Barry L. Soldridge, Jr., appeals from the order entered in the Northampton County Court of Common Pleas, denying his first Post Conviction Relief Act[1] ("PCRA") petition seeking reinstatement of all of his appellate and PCRA rights. Appellant contends his waiver of his appellate and PCRA rights was not knowing, intelligent and voluntary. We affirm.

Following a jury trial, Appellant was found guilty of two counts of first degree capital murder.[2] Prior to sentencing, the Commonwealth agreed not to seek the death penalty and Appellant accepted a sentence of two

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

[2] 18 Pa.C.S. § 2502(a).

consecutive life terms in return for his waiver of all appellate and PCRA rights. Appellant was sentenced on October 14, 2011.

On October 3, 2012, Appellant filed a *pro se* PCRA petition. The court denied the petition and Appellant appealed. This Court vacated the order denying PCRA relief and remanded to the PCRA court with directions to appoint counsel to represent Appellant. *Commonwealth v. Soldridge, Jr.*, 19 EDA 2013 (unpublished memorandum at 2) (Pa. Super. July 24, 2013). On August 26, 2013, counsel was appointed. Appellant filed a request for alternate counsel on November 3, 2014. On November 4, 2014, present counsel was appointed. On February 5, 2015, counsel filed a PCRA petition contending Appellant's waiver of all of his appellate and PCRA rights was not free and voluntary. On February 25, 2015, the PCRA court held a hearing on the petition. On April 17, 2015, the petition was denied. This timely appeal followed. Appellant filed a timely court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The PCRA court filed a Pa.R.A.P. 1925(a) statement relying upon the reasons set forth in the Opinion and Order dated April 17, 2015.

Appellant raises the following issue for our review: "Whether the trial court committed legal error by denying Appellant's PCRA claim?" Appellant's Brief at 4. Appellant contends that his waiver of his appellate and PCRA rights was not knowing and voluntary and therefore his appellate and PCRA rights should be reinstated. *Id.* at 8. He claims neither the written nor oral

colloquy discussed the nature of mitigating factors and PCRA rights. **Id.** Appellant argues that "[b]oth colloquies are merely both verbatim recitations of the statutes and laws governing our jurisprudence, rather than conversations to explore the true meaning of the words being stated." **Id.** at 9.

Our review is governed by the following principles:  "On appeal from the denial of PCRA relief, our standard of review calls for us to determine whether the ruling of the PCRA court is supported by the record and free of legal error.  The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Commonwealth v. Lewis**, 63 A.3d 1274, 1278 (Pa. Super. 2013)

We review Appellant's waiver of his appellate rights as follows:

> For a waiver to be knowing, the defendant must be made aware of the "essential ingredients" of the right he or she is waiving to ensure there is an understanding of the significance of what he or she is giving up.

> \*   \*   \*

> To be voluntary, the waiver must be "the free and unconstrained choice of its maker."  This requires a showing that the defendant, after consultation with counsel (if any) and consideration of the right he or she is forfeiting, has decided to waive the right at issue.

> Finally, for there to be an express waiver of a right, the trial court must conduct a colloquy on the record to ensure the decision to waive the right is informed and voluntary.

**Commonwealth v. Baker**, 72 A.3d 652, 667-68 (Pa. Super. 2013) (citations omitted), *appeal denied*, 86 A.3d. 231 (Pa. 2014).

Instantly, Appellant waived all of his appellate and PCRA rights in exchange for the Commonwealth's agreement not to pursue the death penalty. The trial court opined:

> [Appellant] knowingly, voluntarily and intelligently accepted a plea negotiation with the Commonwealth, in which he waived all of his appellate rights . . . . In exchange for [Appellant] giving up these various rights, he avoided the Commonwealth seeking the death penalty in the sentencing phase of his murder trial. Thereafter, this [c]ourt conducted a lengthy oral colloquy with [Appellant], wherein this [c]ourt ensured that [he] was not under the influence of any drugs, alcohol, or medication and that he was not being treated by a psychologist or psychiatrist at the time of the colloquy that would undermine his comprehension of his agreement with the Commonwealth. The [c]ourt also ensured that [Appellant] read and understood the English language and understood not only the agreement but the reasons for the agreement.
>
> The [c]ourt then engaged in dialogue with [Appellant] regarding the rights he was forgoing such as the right to present mitigating evidence which would enable him to tell the jury "virtually everything" about himself and about the circumstances surrounding the murders from his point of view. The [c]ourt then ensured that [Appellant] discussed with his counsel the ramifications of not presenting mitigating evidence to the jury . . . .
>
> * * *
>
> [Appellant] was aware of the content of the written colloquy and the oral colloquy that he understood the agreement with the Commonwealth. . . .
>
> The [c]ourt also ensured that [Appellant] was satisfied with the performance of his counsel and that his counsel spoke with him regarding the content of the agreement and that by waiving his post-sentence rights, he was waiving the ability to challenge the effectiveness of his counsel.

* * *

[Appellant] understood that he waived his right to present mitigating evidence and he would not be able to present any evidence the jury could take into consideration in fashioning [his] sentence, including any evidence relating to mental impairments. Furthermore, [Appellant] understood that he could not present any future arguments regarding ineffective assistance of his counsel due to their failure to raise the argument of [his] mental infirmities or any other types of mitigating evidence.

* * *

[T]his [c]ourt explained to [Appellant] his rights under the PCRA, . . . the implications of giving up those rights, as well as the avenue through the court system, both State and Federal, he was foregoing, and that after the day of his hearing no other court would review his case.

Due to both the oral and written colloquy executed by [Appellant], it is apparent to this [c]ourt that [Appellant] fully understood what his agreement with the Commonwealth entailed in regards to his sentence and appellate rights. Further, this [c]ourt finds that [Appellant's] waiver of his appellate rights was informed, knowing, voluntary and intelligent, and that such waiver was not the product of coercion.

PCRA Ct. Op., 4/17/15, at 4-6, 8, 10 (citations to record omitted). We find

no relief is due.

A review of the record belies Appellant's claims. The court conducted

an oral colloquy, *inter alia*, as follows:

Q: You understand that you are entitled to a penalty hearing to decide whether you are to be sentenced to life imprisonment without parole or death penalty on 2 counts of first degree murder?

A: Yes.

Q: . . . I want you to explain to me in your own words. What do you understand that was supposed to happen today?

A: We were supposed to go through with the penalty phase to weight [sic] the aggravating and mitigating circumstances of what happened.

\* \* \*

Q: And you know that the Commonwealth has to prove the aggravating factors by beyond a reasonable doubt . . . .

A: Yes.

Q: And you understand that the aggravating circumstances are the killing of more than 1 person and putting others in danger at the time of the killing. And that would have been proved through the testimony of the damage to the trailer. . . .

A: Yes.

Q: And the mitigating factors, virtually everything about you, would have been able to come in before the jury for a mitigating factor. It is a very broad category. In fact, Mr. Shipman[3] told me he had 12 witnesses ready to go.

Am I right, Mr. Shipman?

Mr. Shipman: That's correct.

The Court: How many of those were expert witnesses?

Mr. Shipman: Four, well 4 potential expert witnesses.

. . . By the Court:

---

[3] Christopher Shipman was Appellant's counsel.

Q: Now, you have discussed this with your counsel and you agree that you are not going to be presenting any mitigating evidence in open Court?

A: Yes.

Q: So you are never going to get your chance to tell this jury your side of the story. Do you understand that?

A: Yes.

* * *

Q: And you are giving up your rights here that all 12 jurors must be convinced beyond a reasonable doubt as to the existence of any aggravating circumstances and that their decision must be unanimous. Understood?

A: Yes.

Q: I also note that any one juror alone can find a mitigating circumstance has been proven by a preponderance of the evidence and that this decision does not have to be unanimous. You understand?

A: Yes.

Q: And that every juror is free to decide for himself or herself whether or not any mitigating factors have been proven. . . .

A: Yes.

N.T. Sentencing Hr'g, 10/14/11, at 7-10. The court then referred to the written colloquy and asked counsel whether he had reviewed it with Appellant and explained it to him. Counsel answered in the affirmative. *Id.* at 11. The court asked Appellant if he had any questions about the written colloquy and he stated and repeated: "I understand it. It is clear." *Id.*

[The Court]: . . . And you understand that all 12 jurors must agree to either a life imprisonment without parole of a death sentence. Do you understand that?

A: Yes.

Q: And you know that if for some reason all the jurors are unable to unanimously agree to a sentence I will dismiss the jury and I would have sentenced you to life in prison without parole. Do you know that?

A: Yes.

Q: You know that even if 1 juror finds that any mitigating circumstances outweighs [sic] the aggravating circumstance the sentence must be life in prison without parole?

A: Yes.

Q: Do you know that and do you understand that by entering this agreement you are waiving your right to have the jury decide your penalty to this offense?

A: Yes.

Q: . . . You understand that a life sentence actually means life in this state? Unlike some other places, life without parole means life without parole in Pennsylvania?

A: Yes.

* * *

Q: And in return for the DA's decision not to seek the death penalty on a count of murder in the first degree, for which I found you guilty, I agree to accept the sentence of life in prison without parole on the count for first degree murder, correct?

A: Yes.

Q: I agree never to seek, file or have filed on my behalf any direct or collateral appeal of either my conviction or

sentence or this agreement to either the Pennsylvania Superior, Supreme or any Federal Court?

A: Yes.

Q: Do you understand you are giving up these rights now and forever?

A: Yes.

Q: You are giving up your Constitutional right to claim ineffective assistance of counsel?

A: Yes.

Q: Now, I have asked you if you are happy with their services throughout the trial and you said you were. And by entering this you cannot claim later that they weren't adequately prepared, which obviously they were. Agreed?

A: Yes.

Q: You can't dispute the defense strategy in the future?

A: Yes.

Q: You can't later say I wanted to testify and they wouldn't let me. . . .

A: Yes.

Q: [Y]ou can't complain about the failure to file pretrial motions or post trial motions?

A: Yes.

Q: You can't complain about anything I did during the trial either. Do you understand that?

A: Yes.

Q: Or the DA?

A: Yes.

Q: . . . I agree to never seek or file, ever file on my behalf any claims of Trial Court error regarding any pretrial, trial or post trial rulings or any claim of prosecutorial misconduct, pretrial, trial or post trial. I know that I am giving up those rights forever, agreed?

A: Yes.

Q: I agree never to file or seek to have filed on my behalf any petition or allocatur in either the State or Federal court systems related to this case. I know I'm giving up these rights forever?

A: Yes.

Q: I agree to never seek or have filed on my behalf any State or Federal collateral appeal of my conviction or sentence on this agreement including but not limited to any relief under the Post Conviction Relief Act or any Federal habeas corpus petition. Do you understand?

A: Yes.

\* \* \*

Q: Do you understand that if you file a petition under PCRA and the trial [c]ourt denied my petition I would have a right to appeal to the Pennsylvania Supreme Court on the denial of this petition. I knowingly am forever giving up that right. You understand?

A: Yes.

Q: I know that if the Pennsylvania Supreme Court affirmed . . . the denial of my PCRA petition I could ask the United States Supreme Court to review my case. I know that I am giving up that right forever.

A: Yes.

Q: I know that if the U.S. Supreme Court did not review my case I could go to a Federal Trial Judge, ask them to

evaluate my claims. I know I am giving up that right forever?

A: Yes.

Q: I know that if the Federal Trial Judge does not grant me relief I could appeal that decision to the Federal Court of Appeals and ask them to review the decision of the Trial Court. I know I am giving up that right forever?

A: Yes.

Q: I know if the Federal Court of Appeals does not grant me relief I can appeal that decision to the United States Supreme Court and ask them to review the decision of the Trial Court. I know that I am giving up that right forever.

A: Yes.

Q: I agree that no other Court will review my case after today?

A: Yes.

Q: . . . You do know if a sentence of death was imposed, the Pennsylvania Supreme Court would automatically review your case. Do you understand that?. And you are giving up that right, too?

A: Yes.

Q: I agree never to seek, file or have filed on my behalf any petition for Pardon . . . . I know I'm giving up that right forever, agreed?

A: Yes.

Q: I agree never to have filed or seek to file or have filed on my behalf any appeal for commutation of any of my sentence to the Governor of this great Commonwealth. I'm giving up that right forever. Do you understand that?

A: Yes.

Q: I agree never to ask or have filed on my behalf any petition for extraordinary relief or post sentence motion before any State or Federal Court relating to [your] convictions or sentences of this agreement. I know I am giving up that right forever. Agreed?

A: Yes.

Q: I agree that a copy of this written agreement and colloquy should become part of my prison record or file. Agreed?

A: Yes.

Q: In return for my decision to comply with all the terms and conditions of this agreement and to give up each and every one of the rights described, the District Attorney agrees not to seek the death penalty against me on the count of murder in the first degree of which I have been found guilty.

A: Yes.

Q: Other than the terms and conditions set forth in this agreement no one has promised me anything or forced me or threatened me to accept the terms and conditions of this agreement. I have decided to accept all the terms and conditions of this agreement. And I know what I do and say today is final?

A: Correct.

*     *     *

Q: . . . I have read this entire [written] agreement [colloquy] and discussed it with my counsel and I have no question regarding the terms and conditions of the agreement. I understand exactly what is written in it. Yes?

A: Yes.

**Id.** at 13-22.

- 12 -

Instantly, the Commonwealth agreed not to seek the death penalty and Appellant accepted a sentence of two consecutive life terms in return for his waiver of all appellate and PCRA rights. A review of the record reveals the trial court made Appellant aware of the rights he was giving up. Therefore, his waiver was knowing. *See Baker*, 72 A.3d at 667. Appellant testified he consulted with counsel and was not coerced to forfeit his right to all appellate and PCRA review. Therefore, his waiver was voluntary. *See id.* We find the PCRA court's ruling to be supported by the record and free of legal error. *See Lewis*, 63 A.3d at 1278.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/15/2015