J-A08037-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RICHARD HORNE | : | |
| | : | |
| Appellant | : | No. 1055 WDA 2018 |

Appeal from the Judgment of Sentence Entered March 1, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0008241-2016

BEFORE: PANELLA, P.J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED JULY 16, 2019**

Richard Horne appeals from the judgment of sentence entered following his bench trial convictions for firearms offenses. Horne challenges the discretionary aspects of his sentence. We affirm.

The facts giving rise to Horne's arrest are as follows. While arresting Horne on an outstanding warrant in an unrelated case, Detective Jeffrey Tomer "observed a firearm in [Horne's] right pants pocket." Trial Court Opinion (TCO), filed 10/18/18, at 4, 5. Horne did not have a license for the firearm and was otherwise ineligible to carry a firearm. *Id.* The Commonwealth charged Horne with firearms not to be carried without a license, persons not to possess firearms, receiving stolen property, and resisting arrest ("the instant charges").[1]

---

[1] 18 Pa.C.S.A. §§ 6106(a)(1); 6105(a)(1); 3925(a); and 5104, respectively.

Before trial, Horne failed to appear for court twice. ***See*** Commonwealth's Memorandum in Aid of Sentencing, filed 2/27/18 at ¶¶ 14, 15. After the second time, police were unable to locate Horne for five months, and eventually found him in the bedroom of an apartment, where they arrested him. ***Id.*** at ¶ 15, 18. The officers also found a firearm in the bedroom. ***Id.*** Consequently, the Commonwealth instituted additional charges against Horne, but later *nolle prossed* those charges. ***See*** Docket, CP-02-CR-0012827-2017.

The instant charges proceeded to a bench trial and the court found Horne guilty of carrying a firearm without a license and persons not to possess a firearm.[2] Immediately following the bench trial, defense counsel presented witnesses for sentencing purposes, which the court scheduled for a later date.

At sentencing, the Commonwealth told the trial court that the firearm found on Horne when he was arrested for the instant charges had allegedly been used in a shooting two days before the arrest:

> In this case he was only 20 years old, and I would note, as I did in the memorandum, that the firearm Detective Tomer took from his pocket in this case was sent to the Crime Lab and tested by the firearms experts at the lab. They found that two days prior to [Detective] Tomer taking this gun out of his pocket it was used to shoot a young man named Eric Williams in the North Side section of the city, specifically on Belleau Drive, two days prior.

N.T., Sentencing Hearing, 3/1/18, at 8.

---

[2] 18 Pa.C.S.A. §§ 6106(a)(1) and 6105(a)(1), respectively.

- 2 -

The Assistant District Attorney ("ADA") went on to say that the second firearm had been used in two shootings, one resulting in a death 16 days before Horne's arrest on the instant charges, and another involving Eric Williams and his mother. ***See id.*** at 9, 22. This information was also in the Commonwealth's sentencing memorandum, which also stated that the crime lab reports connected the second gun to a separate homicide as well as to another shooting of Eric Williams:

12. Two days later, on June 27, 2016, the Defendant (who was 20 years old at the time) was arrested in possession of a .45 caliber Glock pistol at 1440 Davis Avenue, in the North Side section of the City of Pittsburgh. City of Pittsburgh Police Officer Jeffrey Tomer located the .45 caliber Glock pistol inside the Defendant's pants' pocket. Scientist William Best of the Allegheny County Officer of the Medical Examiner examined that .45 caliber Glock pistol and authored a lap report at 16LAB06388, wherein Scientist Best concluded that .45 caliber Glock pistol discharged the casings found on scene of the shooting of Eric Williams on June 25, 2016. ***Thus, merely two days before Officer Tomer arrested the Defendant in possession of the .45 caliber Glock pistol in this case, it was used in the shooting of victim Eric Williams.***

\*\*\*

19. The recovered 9mm caliber Taurus pistol was sent to the Allegheny County Office of the Medical Examiner where it was examined by scientist Thomas Morgan, who authored a lab report at 17LAB06019, concluding that the recovered 9mm caliber pistol discharged the 9mm casings found at the scene of homicide of Shayne Abrams on June 4, 2017, and that same 9mm caliber pistol also discharged the 9mm casings found at the scene of the second shooting of Eric Williams on June 25, 2017.

Commonwealth's Sentencing Memo at ¶¶ 12, 19 (bold and italics in original; underlining added).

The Commonwealth did not present the lab reports to the court, place them in evidence, or present the testimony of a lab employee with personal knowledge of the test results. The Commonwealth also did not charge Horne in any of the shootings.

Defense counsel did not object to the ADA's statements about the lab reports or to the characterizations of them in the Commonwealth's sentencing memorandum. However, defense counsel argued that the Commonwealth's attempts to link Horne to the shootings were "speculation" and pointed out that Horne had not been convicted in either shooting:

> [Defense Counsel]: With respect to what Ms. Pratt said, you know, part of the – one of the fundamental tenets and principles of our justice system is that people are innocent until proven guilty, and speculation and arrests and things that did not lead to conviction is merely that, Your Honor.

*Id.* at 13.

The trial court responded that it found the prosecutor's statements that the crime lab reports linked the guns found on Horne to two shootings involving the same victim to be "overwhelming and powerful" circumstantial evidence. *Id.* at 13. In response, defense counsel stated the following:

> First of all, we know Mr. Horne isn't acquiring these guns in a legal fashion. This is the nature of the street, as you may call it. People – it would make sense that someone who used a gun in shooting or some sort or attack on another person would discard that gun or sell that gun or get rid of that gun. Mr. Horne has not in any way been convicted of these offenses or even charged with these offenses, Your Honor, and I think that to use that against him is inappropriate in this decision.

- 4 -

*Id.* at 14-15. The court replied, "I don't disagree with you, but I can sentence him to a guideline sentence to almost exactly what she asked for and it will be a legitimate sentence." *Id.* at 15.

Horne exercised his right to allocution but did not address the Commonwealth's allegation that he was involved in the shootings. *Id.* at 20-21.

The trial court then sentenced Horne to three and one-half to seven years' incarceration for carrying a firearm, followed by five years' probation for the possession of a firearm conviction. Horne filed a post-sentence motion, arguing that the trial court improperly considered the ballistic testing when Horne had not been convicted or charged in connection with any of the shootings. The trial court denied the motion and this timely appeal followed.

Horne's Statement of the Question Involved reads:

> Did the trial court ignore Mr. Horne's mitigating evidence and fail to consider and apply all relevant sentencing criteria, including the protection of the public, the gravity of the offense, and especially Mr. Horne's character and rehabilitative needs, as required under 42 Pa.C.S.[A.] § 9721(b) (sentencing generally; general standards), thus making Mr. Horne's sentence excessive and unreasonable? Did the trial court deny Mr. Horne his constitutional right to a jury trial and the presumption of innocence by considering inadmissible hearsay evidence of unrelated shootings when crafting Mr. Horne's statutory-maximum sentence, in contravention of the fundamental norms of sentencing?

Horne's Br. at 4.

Horne challenges discretionary aspects of his sentence. As such, before addressing the merits of his issues, we must determine whether:

- 5 -

(1) The appellant preserved the issue either by raising it at the time of sentencing or in a post sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of his appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

***Commonwealth v. Baker***, 72 A.3d 652, 662 (Pa.Super. 2013) (quoting

***Commonwealth v. Stein***, 39 A.3d 365, 370 (Pa.Super. 2012)).

Although Horne's appeal is timely and his brief includes a Pa.R.A.P. 2119(f) statement, he has not preserved all the issues he seeks to argue in this Court. His Rule 2119(f) statement identifies three issues. He first contends that the trial court "failed to consider his evidence in mitigation, his rehabilitative needs, and protection of the public. . . ." Horne's Br. at 27. He also argues that the "aggregate, statutory-maximum sentence, which consisted of multiple consecutively-run sentences, was manifestly unreasonable and unduly harsh. . . ." ***Id.*** Last, he argues that in sentencing him, "the Trial Court improperly considered unverified, inadmissible hearsay evidence alleging that Mr. Horne was connected with three shootings Mr. Horne had never been charged with or convicted of. . . ." ***Id.***

Horne properly preserved the first two issues and the two questions together raise a substantial question. ***See Commonwealth v. Swope***, 123 A.3d 333, 339 (Pa.Super. 2015) (stating that a claim of an excessive sentence combined with claim that court failed to consider mitigating factors raises a substantial question). However, he waived his third issue by failing to raise his hearsay issue before the trial court. ***See*** Pa.R.A.P. 302(a).

Turning to the merits of Horne's preserved issues, Horne maintains that the trial court failed to consider his rehabilitative needs as well as his mitigating factors. The record before us belies this argument. The court at sentencing reviewed the Pre-Sentence Investigation report (PSI) and heard extensive testimony from the brother of Horne's girlfriend, Horne's brother, mother, and grandmother, and a local pastor. **See** N.T., Trial at 51-76; **see also** N.T., Sentencing at 3 (court referencing PSI). The court was thus well aware of Horne's mitigating evidence and his rehabilitative needs, considered it, and gave it the weight it deemed appropriate. **See** TCO at 6-7; **Commonwealth v. Moury**, 992 A.2d 162, 175 (Pa.Super. 2010) (stating presumption that court is aware of and weighs considerations included in PSI including mitigating factors). This claim fails.

Next, Horne maintains that "because the record is devoid of any thoughtful consideration of the mitigating facts presented at sentencing, Mr. Horne's consecutive statutory-maximum sentences were manifestly unreasonable." Horne's Br. at 37. As above, the court is presumed to have considered the evidence before it, and nothing in the record suggests otherwise. We affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/16/2019