J-S53034-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COURTNEY LOGAN | : | |
| | : | |
| Appellant | : | No. 2884 EDA 2019 |

Appeal from the Judgment of Sentence Entered May 24, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0005089-2018

BEFORE:  SHOGAN, J., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED APRIL 28, 2021**

Courtney Logan (Logan) appeals from the judgment of sentence imposed by the Court of Common Pleas of Philadelphia County (trial court) after she entered an open guilty plea to one count of endangering the welfare of children.  On appeal, Logan challenges the discretionary aspects of her sentence.  We affirm.

**I.**

We take these facts from Logan's plea hearing.  On the morning of April 12, 2019, Logan's four-month-old daughter (Daughter) was transported to Children's Hospital of Philadelphia after Logan called 911.  When Daughter arrived, the hospital immediately admitted her to the Intensive Care Unit

_____

[*] Retired Senior Judge assigned to the Superior Court.

because of severe injuries. These injuries consisted of bleeding to her brain; bleeding behind both eyes; a traumatic brain injury; and significant brain and neurological damage. Daughter also had old fractures that were healing. Suspecting child abuse, the hospital contacted the police.

After responding to the hospital, the police interviewed Logan. Logan could not explain how Daughter sustained her injuries, even though she was the only person with Daughter for the preceding 24 hours. She told the police that Daughter went to sleep the day before (April 11th) around 11:00 a.m. and then slept for about 24 hours. Whenever Logan would try to wake her, Daughter was unresponsive. Mother, however, did not seek medical help. Instead, she waited until 7:00 a.m. the next morning (April 12th) before calling the hospital. Upon hearing about Daughter's condition, hospital personnel told Logan to immediately bring her child to the hospital. Mother, however, delayed further and waited until 10:00 a.m. before calling 911 and having Daughter transported to the hospital. According to the doctors that treated Daughter, Logan's delay in bringing her child to the hospital exacerbated Daughter's injuries, particularly her neurological brain injury.

At first, the Commonwealth believed Logan caused Daughter's near-fatal injuries, charging her with attempted murder and aggravated assault. After further investigation, however, the Commonwealth came to believe that Daughter's biological father, Russell Watson (Watson), was the possible abuser, even though there was not enough evidence to charge him.

Nevertheless, because of her delay in seeking medical care for Daughter, Logan entered an open guilty plea to a single first-degree felony count of endangering the welfare of children (EWOC), 18 Pa.C.S. § 4304(a)(1).[1]  Under subsection (b) of the EWOC subsection, the offense's grading increases to a second-degree felony if the actor's conduct "created a substantial risk of death or serious bodily injury and was part of a course of conduct."  18 Pa.C.S. § 4304(b)(1)(iv).  The grading increases to a first-degree felony if "the child was under six years of age."  18 Pa.C.S. § 4304(b)(2).

Because she had no prior criminal convictions, Logan had a prior record score of zero.  The offense gravity score, meanwhile, was eight because Logan's EWOC conviction was a first-degree felony.  204 Pa. Code. § 303.15 (offense listing).[2]  As a result, Logan's standard range guidelines were 9 to 16 months, with her aggravated/mitigated range being plus or minus 9 months.  204 Pa. Code § 303.16 (basic sentencing matrix).

_____

[1] As we have explained, "[u]nder an open plea, the defendant does not enter into an agreement with the Commonwealth.  There is no *quid pro quo* exchange between the defendant and the Commonwealth whereby the Commonwealth agrees to some action in exchange for the defendant's guilty plea."  **Commonwealth v. Williams**, 198 A.3d 1181, 1184 (Pa. Super. 2018).

[2] The offense gravity score for EWOC graded as a first-degree felony was later increased to nine.  **See** Sentencing Guidelines, 7th Edition Amendment 5 (Effective 1/1/2020), at 303.15 (offense listing).

At her sentencing hearing, Logan's counsel began by acknowledging that Logan, though not the perpetrator, did not do enough to protect Daughter from Watson abusing her. According to counsel, Logan ignored signs that Watson was abusive. This included a prior incident that involved Watson breaking their son's leg. Even when a judge removed their son from the home, Logan still believed Watson that it was an accident. Logan did not realize that Watson was abusive until the trial court revoked her bail and she met a woman in jail who also had children with Watson. This other woman told Logan that all four of her children were removed from her home because of Watson's abuse.

To help explain why Logan failed to prevent the abuse, her counsel detailed Logan's difficult childhood and lack of male role models while growing up. This began with her father being abusive to both Logan and her mother. This abuse, in turn, caused Logan's mother to use drugs. Counsel recounted how mother would take Logan with her to "crack houses" and use drugs. Eventually, one of mother's friends had to take custody of Logan because of the mother's drug use.

Counsel next detailed how Logan had her first child as a teenager and lived with her first child's father until he was imprisoned. Because her father was unwilling to help and her mother was unable, Logan relied on shelter care for housing. It was during one of these periods that she met Watson and began a relationship with him, even though he was squatting in an abandoned

house at the time. Together, they had two children, including Daughter. Logan eventually obtained her own housing but allowed Watson to stay with her despite her housing agreement prohibiting other adults from living there. Later, after Daughter was taken to the hospital, Logan lied to the police about Watson living with her. Counsel, however, explained that Logan did this because she was afraid that she would lose her housing if she violated her housing agreement.

Counsel corroborated this background with three witnesses who knew Logan, including Logan's mother and the family friend who looked after Logan as a child. Counsel also detailed how Logan had made significant improvement while awaiting sentencing. A case manager with Mental Health Partnerships testified that Logan had completed their reentry program and had become a certified peer specialist. Additionally, the lead clinician at the University Penn Center for Carceral Communities testified that they had devised a treatment plan for Logan that would include continuing group and individual therapy. Finally, after the Commonwealth made its presentation, Logan exercised her right to allocution and expressed remorse for what happened to Daughter and allowing Watson to harm her. For all these reasons, Logan requested that she receive a standard range sentence.

The Commonwealth countered that Logan should receive an aggravated sentence of four to eight years' imprisonment. Among other things, the Commonwealth emphasized Logan's delay in not seeking medical help for

Daughter. This included not only the critical three-hour period on April 12th after the hospital told Logan to bring in Daughter, but also the day before when Daughter was not responsive for 24 hours straight. Because of this delay, the Commonwealth argued, Daughter was a "near fatality" when she arrived at the hospital with her injuries. The Commonwealth added that many of these injuries were healing skull, rib and arm fractures, suggesting a pattern of abuse.

Additionally, in arguing for an aggravated sentence, the Commonwealth pointed to Logan's lack of candor when the police interviewed her. Indeed, the Commonwealth observed, Logan did not admit that she left Daughter alone with Watson until the sentencing hearing. On this point, the Commonwealth felt that Logan's professed reason for her lack of candor - being afraid of losing her housing - did not excuse her conduct, especially considering Daughter's condition. The Commonwealth added that Logan had no questions about Daughter's injuries at the hospital but was concerned with receiving a doctor's note explaining why she would miss an appointment about her water bill.

After hearing from both parties, the trial court sentenced Logan to three and one-half to seven years' imprisonment followed by four years of reporting probation. As part of its sentence, the trial court also ordered that Logan undergo mental health treatment, attend therapy and parenting classes, and take anger management classes.

In sentencing Logan outside the guidelines, the trial court explained its reasoning:

> After reviewing everything that was generated for this hearing, all the reports and documents, I've heard all the testimony, I've heard all the arguments. And this is just point blank sad, the reason why we're here today, and it really is a blessing that by grace this was not a homicide.
>
> I am very troubled by the facts of this case, the injuries of your child, the length and time in which treatment was actually obtained, and I am glad that you are remorseful today. I think it must be balanced against what you actually did, and the injuries the child faced.
>
> ***
>
> And I do incorporate the assistant district attorney's arguments as well, that's why I fashioned the sentence, but I did take into consideration the mitigation.

N.T., 5/24/19, at 51, 53.

Logan filed a post-sentence motion requesting downward modification of her sentence, arguing that the trial court imposed an excessive and manifestly unreasonable sentence by overlooking her mitigating evidence and potential for rehabilitation. After her post-sentence motion was denied by operation of law, Logan filed this timely appeal to raise one issue:

> Did not the lower court err as a matter of law, abuse its discretion, and violate general sentencing principles when it imposed a sentence of 3 ½ to 7 years confinement plus four years of probation where this sentence was manifestly excessive and unreasonable in that it far surpassed what was required to protect the public and went well beyond what was necessary to foster [Logan's] rehabilitation?

Logan's Brief at 3.

**II.**

Logan's sole issue implicates the discretionary aspects of sentencing. "The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super. 2014). "An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence." *Id.* We conduct this four-part test to determine whether:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post-sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

*Commonwealth v. Baker*, 72 A.3d 652, 662 (Pa. Super. 2013) (citation omitted). "A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." *Commonwealth v. Dodge*, 77 A.3d 1263, 1268 (Pa. Super. 2013) (citations omitted).

Logan satisfies the first three requirements of the four-part test. First, Logan preserved the issue by raising it in a timely post-sentence motion. Second, she filed a timely notice of appeal. Third, she has set forth a concise statement of reasons relied on for the allowance of appeal under Pa.R.A.P. 2119(f).

In her Rule 2119(f) statement, Logan argues that the trial court abused its discretion by disregarding her rehabilitative needs and other factors under 42 Pa.C.S. § 9721(b). **See** Logan's Brief at 10-12. This Court has found a substantial question exists when the appellant alleged that the sentencing court ignored the factors set forth in 42 Pa.C.S. § 9721(b). **See Commonwealth v. Fullin**, 892 A.2d 843, 847 (Pa. Super. 2006) (appellant raised a substantial question by alleging that the trial court failed to properly consider the factors set forth in 42 Pa.C.S. § 9721(b)). Thus, Logan has raised a substantial question warranting merits review.[3]

Logan first argues that the trial court deviated from the standard range guidelines with no evidence that she was a danger to the community. On this point, she asserts that the trial court's sentence did not advance protection of the public, especially since none of her three children are under her care.

---

[3] Our standard of review of a challenge to the discretionary aspects of sentencing is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

**Commonwealth v. Watson**, 228 A.3d 928, 936-37 (Pa. Super. 2020) (citations omitted).

Next, Logan contends that the trial court ignored her rehabilitative needs. For this contention, she emphasizes her mitigation evidence that she was a victim of child neglect and abuse. She acknowledges that the trial court ordered she attend therapy, anger management and parenting classes, but argues that this could have been accomplished with less prison time and probation. In her view, the trial court's sentence of imprisonment does not serve her rehabilitation. Logan also faults the trial court for not mentioning the abuse that she endured as a child. Instead, the trial court overweighed the facts of the case while failing to properly fashion a sentence that appropriately accounted for her mitigation evidence. For these reasons, Logan requests a new sentencing hearing.

First, as this Court has often recognized,

[w]here the sentencing judge had the benefit of a presentence report, it will be presumed that he was aware of relevant information regarding appellant's character and weighed those considerations along with the mitigating statutory factors.

*Commonwealth v. Conte*, 198 A.3d 1169, 1177 (Pa. Super. 2018) (citation omitted).

As quoted above, before imposing its sentence, the trial court stated on the record that it had reviewed "all the reports and documents" that Logan had submitted for the sentencing hearing. N.T., 5/24/19, at 51. This would have included the mitigation packet that Logan submitted to the trial court before sentencing. *Id*. at 7. In addition, after rendering its sentence, the trial court stated that it considered all of Logan's mitigation evidence in fashioning

its sentence.  *Id*. at 53.  Accordingly, we cannot agree with Logan's contention that the trial court ignored her mitigation evidence only because, as she seems to suggest, it did not give an extended discussion of how her mitigation evidence factored into its sentencing.  *See Commonwealth v. Feucht*, 955 A.2d 377, 383 (Pa. Super. 2008) ("The [sentencing] court is not required to parrot the words of the Sentencing Code, stating every factor that must be considered under section 9721(b).").

This being the case, Logan's sentencing claim then essentially amounts to a disagreement with the trial court giving greater weight to the facts of the offense over her rehabilitative needs or protection of the public.  The trial court, however, was only obligated to consider these factors, not to accept them in the context of the facts of the case.

As the trial court stated at sentencing, despite Logan's remorse, it was still disturbed by the injures to a four-month-old infant and the 24-hour delay by Logan in seeking help.  In its subsequent Pa.R.A.P. 1925(a) opinion, the trial court echoed its finding, stating, "this court was extremely disturbed by the repulsive nature of the crime and the utterly helpless status of the victim and determined that a significant term of incarceration was warranted."  Trial Court Opinion, 6/29/20, at 5.  In particular, the trial court observed that not only did Logan endanger Daughter by leaving her with Watson, but also by her "underwhelming efforts" to remedy Daughter's injuries.  *Id*. at 6.  Even after taking Daughter to the hospital, Logan refused to explain how her child

received her injuries. *Id*. On this point, the trial court notes, the presentence investigation included information that Logan has a history of "willfully neglecting her role as a parent or protector." *Id*. at 6. This included a family court order that required Watson to not have contact with either her or her children. *Id*. at 7. Besides the severity of Daughter's near-fatal injuries, the trial court relied on evidence of Logan's conduct both before and after the offense that, in the court's view, required a significant term of incarceration. For this reason, we cannot conclude that the trial court made an unreasonable decision in imposing the sentence that it did. Accordingly, Logan is due no relief on his issues challenging the discretionary aspects of her sentence.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 4/28/2021*